756 A.2d 1076 (2000)
In the Matter of Ahmad MOSSAVI, M.D., Petitioner.
Superior Court of New Jersey, Chancery Division, Monmouth County.
Decided June 9, 2000.
Kern Augustine Conroy & Schoppmen, P.C., Bridgewater (Bonnie M. Weir, Esq., *1077 appearing), attorneys for petitioner Ahmad Mossavi, M.D.
Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, Roseland (Joseph M. Gorrell, Esq., appearing), attorneys for respondent Riverview Medical Center.
FISHER, P.J.Ch.
I

THE ISSUE PRESENTED
Petitioner Ahmad Mossavi ("Mossavi") is involved in an internal administrative hearing examining Riverview Medical Center's ("the hospital") denial of his reappointment to its medical staff. He seeks this court's aid in securing, through the issuance of subpoenas, the appearance of two witnesses at the hearing. Because his right to "call and examine" witnesses guaranteed by the hospital's bylawscan be vindicated in no other effective way, the subpoenas will issue.

II

THE FACTUAL AND PROCEDURAL SETTING
Mossavi had been on the hospital's medical staff since 1997. His privileges were suspended on December 9, 1999 because of allegations he sexually harassed several women employed by the hospital. On January 4, 2000 the hospital's medical executive committee denied Mossavi's application for reappointment. As a result, Mossavi demanded an internal hearing to review the committee's recommendation. A fair hearing panel ("the panel") was assembled and a hearing officer appointed in accordance with the hospital's bylaws.
The panel heard the testimony of the complaining witnesses on March 28, 2000, and additional testimony on April 10 and May 1, 2000. On the latter two hearing dates, Mossavi indicated a desire to offer the testimony of S.K., J.F. and C.H.[1] On May 1, S.K. was, according to the petition, "prepared to testify that she was told by a close personal friend of one of the complaining witnesses that the allegations against Dr. Mossavi were fabricated and it was nothing more than a scam." Petition, ¶ 13. The hearing officer found this testimony to be inadmissible hearsay and excluded it. Mossavi contends, however, that J.F. and C.H., unlike S.K., had direct conversations with one of the complaining witnesses which would demonstrate the falsity of the allegations. The hearing officer agreed to adjourn the hearing to provide Mossavi with an opportunity to seek whatever relief might be available from this court.
The hospital concedes that its bylaws charge the hearing officer with the obligations to (1) preside over the hearing to determine the order of procedure, (2) assure that all participants have a reasonable opportunity to present relevant evidence, (3) maintain decorum and (4) provide legal advice to the committee both during the hearing and deliberations. Notwithstanding, without this court's intervention, Mossavi's ability to secure the attendance of witnesses before the panel is dependent upon whether the witnesses will voluntarily appear. The bylaws do not expressly authorize any party to issue a subpoena or even to apply to an appropriate court for the issuance of a subpoena. The bylaws do, however, indicate that "affected individuals," such as Mossavi, are entitled, among other things, to "call and examine witnesses on any matter relevant to any issue in the hearing." Gorrell Certification, Exhibit A (Medical and Dental Staff Bylaws, ¶ 10.6(d)).
As mentioned above, Mossavi alleges that two individualsJ.F. and C.H.had conversations with certain of his accusers, the substance of which might support his *1078 contention that the harassment allegations are false. J.F. and C.H., however, have demonstrated an unwillingness to voluntarily appear at the hearing.[2] Accordingly, Mossavi has sought, through the filing of a petition with this court on May 12, 2000, the issuance of subpoenas. To bring the issue to a rapid resultsince the hearing has been adjourned by the hearing officer pending the resolution of this action[3]the court also then entered an order to show cause returnable today.

III

LEGAL ANALYSIS
The hospital's opposition centers on two theories. First, the hospital believes the granting of relief would be contrary to Mossavi's obligation to exhaust his administrative remedies. Second, the hospital suggests this court's consideration of Mossavi's complaint fails to show proper deference to internal hospital proceedings as required by numerous Supreme Court decisions. Both contentions are without merit, but a third issue, not raised by the parties, is troubling and will be considered after the hospital's contentions are discussed.

A. Exhaustion of Administrative Remedies
It is beyond question that the exhaustion doctrine will not be violated through the granting of the relief sought. As the hospital recognizes, the "doctrine of exhaustion of administrative remedies serves three primary goals: (1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate the need for unnecessary adjudication." Db at 4,[4] quoting Board of Ed. of Bernards Tp., Somerset County v. Bernards Tp. Ed. Ass'n, 79 N.J. 311, 317, 399 A.2d 620 (1979). It is readily apparent that the issuance of subpoenas by this court would not invade but rather serve those primary goals. Such relief would only aid the panel by ensuring the appearance of recalcitrant witnesses who may possess relevant information. The issuance of subpoenas would provide the panel with additional testimony which, if desired by the panel, might aid its decision and which would allow for the creation of a more complete record. The hospital seems to contend, in urging the applicability of the exhaustion doctrine, that Mossavi must go through the entire hearing before seeking judicial review on his right to obtain the assistance of the superior court in securing the attendance of witnesses. The court can see no benefit to be gained by such a result. To reject the claim on that ground would not serve a single purpose for the existence of the exhaustion doctrine.
Even if the exhaustion doctrine were to apply, it would not extend so far. The only administrative remedy which ought to be exhausted is Mossavi's petitioning of the hearing officer for the appearances of these witnesses. Presumably he has already done that (or the parties mutually recognize the hearing officer's lack of power in that regard). In that sense, the exhaustion of Mossavi's obligation to seek below the relief he seeks here would be *1079 futile. In such instances, the exhaustion doctrine, which has never been viewed as an absolute rule, is inapplicable. See, New Jersey Civil Service Association v. State, 88 N.J. 605, 613, 443 A.2d 1070 (1982); Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. 549, 561, 401 A.2d 533 (1979) (in which the administrative action was a similar internal hospital proceeding). Accordingly, there is no purpose to be served by requiring Mossavi to exhaust his administrative remedies in this case.

B. The Deference Due Internal Hospital Proceedings
This court's consideration of this complaint is not contrary to its obligation to defer to the hospital's expertise and right to govern itself. See, Nanavati v. Burdette Tomlin Memorial Hospital, 107 N.J. 240, 251, 526 A.2d 697 (1987) ("In so specialized and sensitive an activity as governing a hospital, courts are well advised to defer to those with the duty to govern"); Garrow, supra, 79 N.J. at 559, 401 A.2d 533. Compelling witnesses to appear for the hearing does not invade the panel's ability to use its expertise in such matters. If the panel determines the testimony is irrelevant or inadmissible, or otherwise of no assistance, it could simply exclude the testimony or ignore its impact. It may do with the witnesses what it wants. The ruling which Mossavi seeks would do nothing more than bring those witnesses to the hearing.
Mossavi does not seek a ruling from this court that the panel must consider or even hear any testimony J.F. and C.H. may have to offer. If Mossavi was seeking such a ruling, the court would certainly reject that contention as invading the panel's right to conduct its hearing as it wishes within the confines of its bylaws. Only then would the hospital's concerns about the court's interference with its processes be implicated. The court understands Mossavi's request to be limited to seeking the court's aid in compelling witnesses to appear at the hearing. He does not seek to have this court override the panel's right to exclude their testimony for hearsay reasons or any other appropriate reason. Accordingly, there is no merit in the hospital's contentions that this court should defer to the panel on the question of whether subpoenas should issue.[5] Indeed, the panel has no subpoena power to defer to.

C. Equitable Relief
Beyond the hospital's opposition, there is yet another concern not raised by any of the participants which is troubling: namely, whether the court is empowered to issue subpoenas in this private, extrajudicial dispute.[6] In other words, may this *1080 court utilize its powers to compel a witness to appear in a non-court proceeding? Stripped to its essentials, a subpoena ad testificandum is nothing more than a court's command that a person appear and give testimony at a proceeding or, upon failure to do so, answer to the court's considerable powers to coerce compliance. See, e.g., Silverman v. Berkson, 141 N.J. 412, 422, 661 A.2d 1266 (1995) ("The very etymology of the word `subpoena' signifies `an order with a penalty for disobedience'"), cert. denied 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995). Whether the intrusion of this court's subpoena power into this private affair is appropriate is a difficult question because no guideline can be found in the rules which govern this court.
Our Court Rules authorize the issuance of subpoenas only in certain delineated situations. R. 1:9-1 and 1:9-2 allow for the issuance of subpoenas for purposes of court proceedings and grand jury proceedings. See, State v. Hilltop Private Nursing Home, Inc., 177 N.J.Super. 377, 426 A.2d 1041 (App.Div.1981); Pressler, Current N.J. Court Rules (Gann 2000), comment to R. 1:9-1 at p. 135. R. 1:9-6 allows for the issuance of subpoenas to compel persons to testify or produce documents before a public officer or agency. These rules obviously do not apply to the present situation and no other rule exists which would support Mossavi's request. Conversely, no rule expressly prohibits the relief sought. The question, then, is whether the court possesses the jurisdiction to grant such relief in the absence of any positive or negative guidance from our court rules.
The parties to this case have a contractual relationship which, through the commencement of legal action, this court has the authority to interpret and enforce. The hospital's bylaws, as indicated earlier, allow for an aggrieved employee, such as Mossavi, to "call and examine witnesses" at a hearing appropriately instituted. Apparently, the hospital believes this procedural right may be vindicated only through the voluntary cooperation of witnesses. That would appear, however, to put Mossavi at a disadvantage under the circumstances. In this case, Mossavi has been accused of sexual harassment by several hospital employees. As a result of those allegations, the medical executive committee denied Mossavi's application for reappointment to the hospital staff. Considering the adverse position already taken by the hospital's medical executive committee to Mossavi's reappointment and the fact that the recalcitrant witnesses in question are or were (or may in the future be) hospital employees, the extent to which Mossavi, or anyone else similarly situated, might receive their uncoerced cooperation is certainly doubtful.[7] Accordingly, Mossaviseeks the fulfillment of his contractual right to "call" and examine witnesses through his appeal to this court's equitable jurisdiction.
The remedies available to courts of equity are broad and adaptable. Indeed, it was the unyielding nature of the English law courts which generated the inventive and flexible remedies of the Chancellor, the King's conscience. Our own Chancery Division is recognized as a descendent of this English tradition, see, Lyn-Anna Properties v. Harborview Development Corp., 145 N.J. 313, 333, 678 A.2d 683 (1996), and, like its ancestors, is fully authorized to discharge the maxims that sustain our equity jurisprudence. Chief among these maxims is that which states "wherever a legal right has been infringed a remedy will be given" or, as more commonly stated, "equity will not suffer a wrong without a remedy." See, Crane v. Bielski 15 N.J. 342, 349, 104 A.2d 651 (1954). Indeed, this maxim, more than any other, provides a constant reminder of *1081 the very reason the original chancery courts were formed. As Justice Heher said for what was once this state's highest court,
Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances and the natural rules which govern their use. There is in fact no limit to their variety in application, the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.
Sears Roebuck & Co. v. Camp, 124 N.J.Eq. 403, 411-412, 1 A.2d 425 (E. & A.1938). The "right" urged by Mossavi comes from the promise of the hospital's bylaws that he could "call" witnesses to testify before the panel. Without judicial intervention, this right will be vindicated only through a change in heart of the witnesses he seeks to call. Considering, however, J.F.'s response to the complaint,[8] that would seem unlikely.
The opposition recognizes Mossavi's right to call witnesses but offers no suggestion as to how that right may be enforced when a witness chooses not to answer that call. Truly, then, in the absence of relief from this court, Mossavi has only a right without a remedy. No court of conscienceabsent a clear legal mandate to the contrary[9]should permit such a result. This court should fulfill the hospital's promise of Mossavi's right to call witnesses through the issuance of subpoenas. No lesser action will suffice.
In the final analysis, this court, by entering the judgment sought, does nothing more than specifically enforce the express terms of the parties' agreement. By so ruling, this court is not showing a lack of deference to the hospital nor is it interfering with the hearing officer's right to control the proceedings.[10] The court is neither directly nor indirectly compelling the panel to hear the testimony of these witnesses or weigh their testimony in a particular way. The relief granted, rather than interfering with the operations of the panel, clearly has the effect of only aiding the hearing officer in fulfilling his duty of providing all parties with a reasonable opportunity to present relevant evidence. The court is merely compelling the recalcitrant witnesses to appear for the hearing as a means of enforcing the right, granted to Mossavi by the hospital's bylaws, to "call" these witnesses. What happens once those witnesses go through the hearing room doors is, at present, entirely up to the panel and its hearing officer.[11]

IV

CONCLUSION
Judgment will be entered directing the witnesses in question to appear for the *1082 hearing at a time and date consistent with the panel's schedule.
NOTES
[1] While their identities are revealed in the pleadings, no point would be served by further invading the privacy of S.K., J.F. and C.H. by using their full names in this opinion. Accordingly, only their initials have been used.
[2] Both J.F. and C.H. were served with the verified complaint and order to show cause. J.F. submitted a letter in response, stating she has nothing "to offer to the case for I know nothing that is relevant," and that she "was told that if [she] felt [she] had nothing to contribute that [she] did not have to be there." C.H. appeared on the return date of the order to show cause but presented no argument in response.
[3] It should be emphasized that the hiatus in the hospital's proceedings was not brought about or continued through any actions of this court but rather with the consent of the parties alone.
[4] "Db" refers to the hospital's brief in opposition to the order to show cause.
[5] The hospital argues that "[c]ompelling reluctant witnesses to appear before the committee, only to have their hearsay testimony overruled by Mr. McBride's consistent hearsay rulings, will not add to the factual record, and, in fact, may muddy the waters by introducing irrelevant side issues." Db at 6. The court fails to see how the issuance of subpoenas to two witnesses could possibly "muddy the waters." If what the hospital says is true about the inadmissibility of their testimony, then it would be expected that their appearance at the hearing would hardly be a blip on the radar screen. If the hospital has some insight into the hearing officer's mind and it is, in fact, true that the hearing officer will rapidly exclude the testimony of J.F. and C.H., then it would seem that an order compelling their appearance will hardly interfere with and not long detain the panel. In short, if what the hospital says about the admissibility of this testimony is true, the relief sought herein by Mossavi will hardly cause injury to the panel or the hospital. The potential injury to Mossavi, if the witnesses are not made available and they do have relevant testimony, however, is certainly significant and greater than the minor inconvenience the hospital complains of.
[6] While no party has argued that this court lacks subject matter jurisdiction, the court is nevertheless duty bound to insure that it possesses jurisdiction in all matters that come before it. See, e.g., Housing Authority of the City of Newark v. West, 69 N.J. 293, 304, 354 A.2d 65 (1976) (Pashman, J., dissenting) ("jurisdictional infirmities resulting from lack of subject matter jurisdiction may not be overcome nor waived by consent of the parties"); Bengali v. Haveliwala, 197 N.J.Super. 55, 57, 484 A.2d 41 (Ch.Div.1984).
[7] Presumably, the hospital is not similarly disadvantaged. Its status as employer would no doubt be sufficient to secure the attendance of any employees it wishes to have appear at the hearing.
[8] See, n. 2, supra.
[9] One of the fascinating aspects of equity jurisprudence is how there may be found for each maxim, another maxim which tends to pull in the opposite direction. For example, as is applicable to the present dilemma, while "equity suffers no right to be without a remedy," equity must also "follow the law." What is troubling about this particular case is the fact that our Court Rules govern the issuance of subpoenas and yet contain no provision for the issuance of a subpoena in the present instance. By the same token, the Court Rules do not expressly prohibit the issuance of a subpoena under the present circumstance. Therein lies the tension that always exists in an equity case of such difficulty.
[10] The hospital also argues that such a precedent would inundate the courts with similar applications in the future. The court doubts that there are so many internal hospital hearings going on as to cause a floodgate of similar actions. Moreover, that strikes me as a poor reason for denying petitioner the rights to "call and examine" witnesses promised by the hospital bylaws.
[11] For example, it would not be inconsistent with this court's very limited ruling for the hearing officer to exclude the testimony of J.F. and C.H. because the hearing officer believes they have no relevant information to provide, that their testimony constitutes inadmissible hearsay, or because of any other appropriate reason.