NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0945-12T1

HETTY ROSENSTEIN, LABOR CO-
CHAIRPERSON OF THE STATE HEALTH
BENEFITS PLAN DESIGN COMMITTEE
and CHARLES WOWKANECH, PRESIDENT,
NEW JERSEY STATE AFL-CIO,

      Appellants,

  v.

STATE OF NEW JERSEY, DEPARTMENT
OF TREASURY, DIVISION OF PENSIONS
AND BENEFITS,

      Respondent.

```
+------------------------------+
|   APPROVED FOR PUBLICATION   |
|                              |
|      December 31, 2014       |
|                              |
|      APPELLATE DIVISION       |
+------------------------------+
```

_____

Argued November 12, 2014 — Decided December 31, 2014

Before Judges Fisher, Nugent and Manahan.

On appeal from the Division of Pensions and Benefits.

Ira W. Mintz argued the cause for appellants (Weissman & Mintz, LLC, attorneys; Mr. Mintz, on the brief).

Eileen Schlindwein Den Bleyker, Senior Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Robert T. Lougy, Assistant Attorney General, of counsel; Ms. Den Bleyker, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In 2011, the Legislature enacted Chapter 78,[1] making numerous and significant changes to public employee pension and health care benefits. See Berg v. Christie, 436 N.J. Super. 220, 240 (App. Div. 2014). As part of this overhaul, the Legislature provided the State Health Benefits Plan Design Committee (SHBPDC) with the exclusive authority to design state health benefits plans — a power previously possessed by the State Health Benefits Commission (SHBC). The SHBPDC consists of six labor and six public employer representatives. N.J.S.A. 52:14-17.27(b). It cannot pass any measures without seven affirmative votes; consequently, neither the governor's appointees nor the union appointees can act alone in designing the state health benefit plan or any of its components. Ibid. When a six-to-six impasse occurs, a super-conciliator is randomly selected from a list developed by the Public Employment Relations Commission. N.J.S.A. 52:14-17.27b.

Motions in the SHBPDC regarding retiree prescription copayments for the calendar year 2013 failed to garner more than six votes, resulting in an impasse. As a result, SHBPDC union members sought conciliation. Notwithstanding the impasse and a demand for the appointment of a super-conciliator, the SHBC was

---

[1] L. 2011, c. 78.

presented in September 2012 with — and its three administration members voted to approve — revised premium rates in which retiree copayments were adjusted in accordance with the plan that failed to obtain seven votes in the SHBPDC process. Accordingly, even though the SHBPDC was ineffectual in determining the level of retiree copayments for the calendar year 2013, and even though SHBPDC members had demanded super-conciliation to resolve the impasse, the Division of Pensions and Benefits (the Division) increased retiree copayments effective January 1, 2013.

Two members of the SHBPDC — Hetty Rosenstein and Charles Wowkanech — appeal to this court, arguing the Division exceeded its authority by raising retiree copayments pursuant to a regulation whose statutory authority had been abrogated by Chapter 78. The Division argues in response that the appeal should be dismissed, claiming appellants lack standing and the super-conciliatory process should be exhausted before there can be a resort to the courts. As for the merits, the Division argues that when the SHBPDC fails to act, "existing statutes, rules, regulations, policies and procedures of the State Health Benefits Program continue in effect." We reject the Division's argument that appellants lack standing as well as its alternative argument that administrative rights must first be

exhausted. And we conclude, on the merits, that the Division lacked the authority to increase retiree prescription copayments because the SHBC lacked the authority to change the state health benefits plan absent a final determination from SHBPDC or through the super-conciliatory process.

I

In rejecting the Division's first argument, we observe that our courts have historically employed a liberal rule of standing. Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 101 (1971); see also Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 645 (2009); N.J. Builders Ass'n v. Bernards Twp., 219 N.J. Super. 539, 539 (App. Div. 1986), aff'd, 108 N.J. 223 (1987). Although our courts will not "function in the abstract" or entertain proceedings commenced "by plaintiffs who are 'mere intermeddlers,' . . . interlopers or strangers to the dispute," we will entertain and adjudicate suits, claims and appeals when "the litigant's concern with the subject matter evidence[s] a sufficient stake and real adverseness." Crescent Park, supra, 58 N.J. at 107 (internal citations omitted).

Here, the question of standing might begin and end with an assumption that appellants are taxpayers. Jen Elec., Inc., supra, 197 N.J. at 644. But appellants are also union representative members of the SHBPDC, and they contend that the

SHBPDC's authority has been wrongfully overstepped by the disputed action taken by the Division. We conclude these circumstances alone are sufficient to imbue appellants with standing here. In addition, we note that Rosenstein is the area director of CWA AFL-CIO District 1, and Wowkanech is president of the state AFL-CIO, and their union members undoubtedly have a keen interest in the outcome.

II

We also find no merit in the Division's argument that appellants have no right to be heard in this court until exhaustion of the conciliation process. The answer to this argument requires consideration of what is presently before us. In most instances, the nature of an appeal is obvious. In others, such as the present matter, we must first identify "the true nature" of the appeal "and to unfold" and ascertain "the true use or end of it." Marcus Aurelius, Meditations, Book XII, paragraph xiv. There are multiple ways of looking at what this appeal represents.

In one sense, this appeal may be viewed as seeking review of the Division's final action in increasing retiree copayments in the absence of SHBPDC approval — a contention that does not invite application of the exhaustion doctrine because, in that limited sense, there would be no further action to be taken by

the Division. If we were to so view this appeal, the exhaustion doctrine would have no application.

In a second sense, the appeal may be viewed as seeking our restoration of the status quo ante pending completion of the super-conciliatory process. The parties seem to adopt this latter description, since even the Division's argument in support of dismissal recognizes that it is the super-conciliatory process which will determine whether there should be an increase in the retiree prescription copayment for the period in question.[2] Because the parties agree the retiree copayment dispute must be subjected to the super-conciliatory process, and in viewing the appeal in this manner, the issue before us is limited to whether this court has the power to intervene to restore the status quo until the impasse is resolved.

Although sound judicial principles may at times counsel otherwise, there is no doubt that courts are empowered to intervene in a dispute pending in some other forum for the purposes of preserving the thing in dispute in that other forum.

---

[2]That is, the Division argues — in seeking dismissal of this appeal — that appellants "cannot bypass or negate [the super-conciliatory] mechanism by seeking relief here." By making that argument, the Division must a fortiori agree that the action it took, and of which appellants complain, is also subject to a final resolution yet to be reached through the conciliation process.

See, e.g., Fischer v. Fischer, 375 N.J. Super. 278, 286-87 (App. Div.) (recognizing the authority of courts to preserve the res to be allocated in a different forum), certif. denied, 183 N.J. 590 (2005); Steiger v. Armellino, 315 N.J. Super. 176, 183-84 (Ch. Div. 1998) (ordering a preservation of a fund pending completion of rule-based fee arbitration); see also Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989) (recognizing a court's authority to enter injunctive relief to preserve the status quo pending institution and completion of arbitration proceedings); In re Mossavi, 334 N.J. Super. 112, 116-22 (Ch. Div. 2000) (holding that courts are authorized to arm litigants with the subpoena power for purposes of compelling the appearance of witnesses at a hospital's internal administrative hearing as the means of enforcing a party's contractual rights).

Moreover, the exercise of the court's inherent equitable power to preserve the res of a controversy which will be resolved in another forum does not violate the principles underlying the exhaustion doctrine. Indeed, the exhaustion doctrine invoked by the Division as a means of avoiding our examination of the controversy is not an absolute — its application is discretionary, turning on the presence and weight of certain considerations. Hawk v. N.J. Inst. of Tech., 428

N.J. Super. 562, 570-71 (App. Div. 2012), certif. denied, 214 N.J. 175 (2013); Alliance for Disabled in Action, Inc. v. Cont'l Props., 371 N.J. Super. 398, 408 (App. Div. 2004), aff'd, 185 N.J. 331 (2005). The doctrine is applied when it will ensure a claim will initially be heard by a body possessing expertise, when it allows for the creation of a factual record that will promote for meaningful appellate review, or when it fosters a potential for terminating the controversy, since an agency decision might satisfy the parties and obviate resort to the courts. See City of Atlantic City v. Laezza, 80 N.J. 255, 265 (1979). Courts should also consider whether requiring the further pursuit of administrative remedies before seeking judicial intervention will be "futile" or might result in irreparable harm, or whether "an overriding public interest calls for a prompt judicial decision." Garrow v. Elizabeth Gen. Hosp. & Dispensary, 79 N.J. 549, 561 (1979); Hawk, supra, 428 N.J. Super. at 571.

Because appellants' intent in filing this appeal was not to disrupt or supplant the conciliation process but to simply restore the status quo ante until conciliation may be completed, we conclude that the exhaustion doctrine has no application. And, to the extent it could be argued that the doctrine has some bearing, we conclude that it cannot be perverted into the means

A-0945-12T1

of allowing the Division to impose an interim remedy while precluding appellants' pursuit of review in or a remedy from this court.

The interests of justice preclude the exhaustion doctrine's use as a bar to the relief sought by appellants here, no matter how the scope and intent of the appeal may be described.[3]

---

[3]We have already identified two ways of viewing the matter before us. Yet a third way of looking at this appeal, which is neither argued nor implicated by the arguments, is to view it as seeking and enforcing a declaratory judgment about the propriety of the actions taken by the SHBC and the Division. Declaratory judgment actions are normally commenced in the trial court, but, even if mistakenly lodged in the wrong division, the Appellate Division possesses the power to exercise original jurisdiction when "necessary to the complete determination of any cause on review." N.J. Const. art. VI, § 5, ¶ 3; see also R. 2:10-5; N.J.S.A. 2A:16-52 (declaring that "[a]ll courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed"). Moreover, invocation of original jurisdiction is particularly appropriate when no fact-finding is necessary, see Price v. Himeji, L.L.C., 214 N.J. 263, 294 (2013), or when the matter implicates the public interest, see Karins v. City of Atlantic City, 152 N.J. 532, 540-41 (1998). Here, the appeal presents a purely legal question concerning whether the authority of the SHBPDC was usurped by the SHBC, and the outcome of that issue is undoubtedly of great public importance. Accordingly, even if this appeal is more accurately recognized as a request for a declaratory judgment concerning the actions of the SHBC, the Division, or both, this court is empowered to exercise original jurisdiction. Indeed, although our courts lack authority to "act independently" from, or "substitute [their] judgment" for, an agency which is empowered to make the decision, the court is certainly empowered "to bring [an] agency's action into conformity with its delegated authority." In re Polk License Revocation, 90 N.J. 550, 578 (1982). That is precisely appellants' argument here.

III

With that, we turn to whether the Division's view of its authority, or its view of SHBC's authority, should be vindicated or rejected pending completion of the super-conciliatory process.

Appellants correctly argue that the adoption of Chapter 78 transferred authority over the plan design of the state health benefits program to the newly-created SHBPDC, which has the:

> [r]esponsibility for and authority over the various plans and components of those plans, including for medical benefits, prescription benefits, dental vision, and any other health care benefits, offered and administered by the program. The [SHBPDC] shall have the authority to create, modify, or terminate any plan or component, at its sole discretion.
>
> [N.J.S.A. 52:14-17.27(b) (emphasis added).]

And, by the same stroke of a pen, the Legislature eliminated the SHBC's former authority in this regard or the force of any other regulation once applicable:

> Any reference in law to the [SHBC] in the context of the creation, modification, or termination of a plan or plan component shall be deemed to apply to the [SHBPDC].
>
> [Ibid.]

With the adoption of these provisions, the Legislature eliminated the efficacy of SHBC's reliance on or ability to act

pursuant to N.J.A.C. 17:9-6.10 — upon which the determinations in question here were based — absent the affirmative action of the SHBPDC.

The broad language of N.J.S.A. 52:14-17.27(b) unmistakably gave SHBPDC the authority to set, among other things, retiree prescription copayment levels as part of its plan-design authority. Because those levels have not been set due to the SHBPDC impasse, and cannot be resolved — as both appellants and the Division agree — until the impasse is broken through the conciliatory process or otherwise, the SHBC acted without authority when it unilaterally decided to increase retiree copayments for the calendar year 2013. In short, Chapter 78 transferred the authority to design all aspects of the state health plan to the SHBPDC.[4] Only the SHBPDC may "create, modify, or terminate" the "various plans and components of those plans." N.J.S.A. 52:14-17.27(b). Until seven members of the SHBPDC approve, or until the SHBPDC's impasse is resolved in super-conciliation, the status quo ante should have been maintained and the retiree copayment levels should not have been altered.

---

[4] We would add that one clear legislative intent revealed by N.J.S.A. 52:47-17.27(b) was the leveling of the balance of power between labor and the public employer by giving six votes to each side, rather than the three-to-two edge previously possessed by the administration when the SHBC had the authority to create, modify and terminate components of the state health plan. See N.J.S.A. 52:47-17.27(a).

The actions of the SHBC and the Division were ultra vires and are hereby vacated.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION