**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1228-17T2

ESSEX COUNTY SHERIFF'S
OFFICERS PBA LOCAL 183
and ESSEX COUNTY SUPERIOR
OFFICERS FOR LODGE 106,

     Petitioners-Appellants,

v.

DEPARTMENT OF THE
TREASURY, DIVISION OF
PENSIONS AND BENEFITS,
STATE HEALTH BENEFITS
COMMISSION,

     Respondent-Respondent.

_____

ESSEX COUNTY SUPERIOR
OFFICERS PBA LOCAL 183A,
ESSEX COUNTY SUPERIOR
OFFICERS FOR LODGE
138, and ESSEX COUNTY PBA
LOCAL 382,

     Intervenors-Appellants.

_____

Argued May 6, 2019 – Decided June 14, 2019

Before Judges Sabatino, Haas and Sumners.

On appeal from the State Health Benefits Commission, Department of the Treasury, Declaratory Ruling 2017-001.

Valerie Palma DeLuisi, Cathlene Y. Banker, and Joseph P. Slawinski argued the cause for appellants (Law Office of Nicholas J. Palma, attorneys for appellant PBA Local 183 and intervenor PBA Local 183A; C. Elston & Associates, LLC, attorneys for appellant FOP Lodge 106 and intervenor FOP Lodge 138; and Law Offices of Steven A. Varano, PC, attorneys for intervenor PBA Local 382; Valerie Palma DeLuisi, Cathlene Y. Banker, Joseph P. Slawinski, and Albert J. Seibert, of counsel and on the joint briefs).

Angelo J. Genova argued the cause for respondent County of Essex (Genova Burns LLC, attorneys; Angelo J. Genova, of counsel and on the briefs; Joseph M. Hannon and Diane M. Camacho, on the brief).

Christopher R. Meyer, Deputy Attorney General, argued the cause for respondent State Health Benefits Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Danielle P. Schimmel, Deputy Attorney General and Christopher R. Meyer, on the briefs).

PER CURIAM

This administrative appeal involves a narrow jurisdictional issue. The issue comes to this court after the State Health Benefits Commission ("the SHB

Commission") issued a declaratory ruling arising from a dispute between the labor union appellants and Essex County regarding health insurance benefits.

The unions maintain that the County unilaterally reduced the levels of their members' bargained-for contractual health benefits without engaging in prior good faith negotiations. In particular, the unions claim their members were transitioned by the County from the coverage under their previous plan to the State Health Benefits Program ("SHBP") under duress. The unions accordingly have filed a separate unfair practice charge against the County, a claim which is pending before the Public Employment Relations Committee ("PERC").

With the unfair practice proceeding before PERC pending, the unions filed a request for declaratory ruling from the SHB Commission on four issues related to the SHBP. According to the unions, the ruling was requested for the purposes of facilitating labor negotiations and the fashioning of an adequate remedy before PERC, assuming the County's unfair practice were proven. The SHB Commission subsequently issued the declaratory ruling, answering all four of the questions posed by the unions.

The unions now contest the SHB Commission's statutory authority and jurisdiction to issue its declaratory ruling concerning what is known as

"Question 3" of the issues they had presented. For the reasons that follow, we affirm the SHB Commission's declaratory ruling.

I.

This appeal was brought by Essex County Sheriff's Officers PBA Local 183 and Essex County Superior Officers FOP Lodge 106, and joined by intervenors, Essex County Superior Officers Association (Sheriff) FOP Lodge 138, New Jersey State PBA Local 382, and Essex County Sheriff's Superior Officers Association PBA Local 183A (collectively, "the Unions"). Together, the Unions represent all the sheriff's officers and corrections officers employed by Essex County.

On September 27, 2016, Essex County adopted a resolution approving its participation for its employees in the SHBP, effective January 1, 2017. According to the resolution, "if Essex County moves into the SHBP in 2017, the savings will be over $9.7 million dollars versus the last and best 2017 offer of Aetna [Insurance Company], our current provider."

In response to this change of health benefits, the Unions brought unfair labor practice proceedings against the County before PERC. The Unions assert in the PERC case that the County did not engage in good faith negotiations in

advance of the change in health care benefits, and were transitioned into the SHBP under duress.[1]

On January 23, 2017, the Unions sought declaratory rulings from the SHB Commission on an expedited basis, seeking to have such rulings assist in resolving the labor disputes pending in PERC.[2] Specifically, the Unions requested the SHB Commission's declaratory ruling on these four specific questions:

> (1) Whether Essex County is required to enroll all employees and retirees who meet the eligibility requirements of the SHBP;
>
> (2) Whether Essex County, as an SHBP participating employer in the SHBP can supplement the medical plans it offers to employees and retirees with the non-SHBP plans;
>
> (3) Whether Essex County, as an SHBP-participating employer, can reimburse employees for incremental costs arising from changes in negotiated levels of health benefits; and

---

[1] According to the Unions' brief, the unfair practice charges are being held in abeyance by PERC pending this appeal.

[2] The Unions' brief details the torturous procedural history of the matters pending before PERC. However, that complicated procedural history of the PERC matters – which involves several emergent applications to both this court and the Supreme Court – is not relevant to the narrow jurisdictional issue now before us. The events in the PERC matter only provide context as to why the Unions sought a declaratory ruling from the SHB Commission in the first place.

(4) If the relief requested is not permissible under the SHBP Act, which provisions of the Act will the [SHB] Commission waive to facilitate a remedy to the change in the negotiated level of benefits?

The Unions' request for declaratory rulings was not heard at the SHB Commission's March or May 2017 regularly scheduled meetings. Consequently, the Unions appealed the SHB Commission's inaction to this court. On July 5, 2017, a panel of this court granted the SHB Commission's cross-motion to remand the case, and ordered the SHB Commission to issue a ruling on the four questions at its "July or September 2017 meeting."

In accordance with this court's remand, on September 13, 2017, the Unions and the County presented arguments before the SHB Commission concerning the four listed questions.[3]

On September 28, 2017, the SHB Commission met in public session to vote on the four presented issues. The day before the vote, six labor representatives of the twelve-member State Health Benefits Plan Design Committee ("Plan Design Committee") sent a letter to the SHB Commission, asserting the Plan Design Committee was the appropriate state entity with

---

[3] A transcript of the September 13, 2017 session is not included in the appellate record and the parties do no rely on it.

jurisdiction over Question 3. That letter was read into the record at the SHB Commission's public meeting. The letter states:

> Dear Chairwoman Culliton: We the undersigned union representatives of the Plan Design Committee of the State Health Benefits Program request that you hold off on the declaratory ruling on your agenda for September 28th until such time as the [Plan Design Committee] has met and fully considered the implications on plan design raised by question 3. The SHB Commission no longer has any authority to make plan design decisions. Respectfully, Patrick Nolan, Robert Little, Kevin Lyons, Hetty Rosenstein, Abdur Yasin and Michael Sandur.

Although the Unions' counsel was not present at the September 28 public meeting, Kevin Lyons, a union-designated member of the Plan Design Committee, appeared before the SHB Commission. Amplifying the September 27 letter he co-signed, Lyons maintained that the SHB Commission did not have the authority to rule on Question 3. Lyons argued that the Plan Design Committee has the sole authority to design state health benefit plans, and that because Question 3 involves copay and reimbursements under the plan, the Plan Design Committee is the correct venue to determine that issue. Lyons also

clarified that the Plan Design Committee was only asserting jurisdiction over Question 3, and not Questions 1, 2, and 4.[4]

After hearing from Lyons, and seeking legal advice in executive session, the SHB Commission issued a detailed written declaratory ruling on September 28, 2017. The relevant part of the ruling as to Question 3 states:

> RULING REQUEST #3:
>
> Pursuant to the [SHBP], is it permissible for the County, as a participant in the SHBP, to reimburse its employees for incremental costs arising from changes in negotiated levels of health benefits?
>
> No, a local employer may not reimburse any out-of-pocket costs that are part of the design of an SHBP plan. With the enactment of Chapter 78 and the Legislature's creation of the [Plan Design Committee], that body was vested with "the sole discretion to set the amounts for maximums, co-pays, deductibles, and other such participant costs for all plans in the program." N.J.S.A. 52:14-17.27(b).
>
> . . . .
>
> As previously stated, reimbursing incremental costs alters the participant's out of pocket costs in the SHBP, and these costs are established plan by plan by the [Plan Design Committee]. The [Plan Design Committee] has exercised its jurisdiction and established co-payments, which are a plan component, for each plan offered. Thus[,] the [SHB] Commission has no authority to

---

[4] On appeal, the Unions likewise only challenge the SHB Commission's jurisdiction over Question 3.

> modify these plan components and cannot permit a participating employer to do so either. The [Plan Design Committee] has the sole authority to modify these plan components and the [SHB] Commission is bound by the plan components created by the [Plan Design Committee].
>
> [(Emphasis added).]

The Unions thereafter filed a motion with this court seeking an order to refer jurisdiction over Question 3 to the Plan Design Committee. Another panel of this court denied that motion.

Additionally, in August 2018, this court denied the Unions' application to compel joinder of the Plan Design Committee as a party to this appeal. Notably, the Plan Design Committee itself has not sought to intervene.

The Unions appeal the SHB Commission's exercise of jurisdiction over Question 3. They also disagree with the substance of the SHB Commission's answer to that Question. The County and the SHB Commission oppose the appeal, and argue the Commission properly exercised its jurisdiction.

II.

This court's review of administrative agency decisions is generally limited. In re Stallworth, 208 N.J. 182, 194 (2011). "We will ordinarily defer to the decision of a State administrative agency unless the appellant establishes that the agency's decision was arbitrary, capricious, or unreasonable, or that it

was unsupported by sufficient credible, competent evidence in the record." Green v. State Health Benefits Comm'n, 373 N.J. Super. 408, 414 (App. Div. 2004).

It is also well established that "[c]ourts afford an agency great deference in reviewing its interpretation of statutes within its scope of authority." N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) (citations omitted). For example, "'[d]eference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)).

Nonetheless, "when an agency's decision is based on the 'agency's interpretation of a statute or its determination of a strictly legal issue,' we are not bound by the agency's interpretation. Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review." Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs. of Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

With these review standards in mind, we proceed to the substance of this jurisdictional appeal. We begin with an overview of the pertinent statutory and regulatory scheme.

## A.

## The State Health Benefits Program Act

Through the authority granted by the State Health Benefits Program Act ("SHBP Act"), the SHBP offers medical, prescription drug, and dental coverage to qualified State and local employees, retirees, and eligible dependents. N.J.S.A. 52:14-17.25 to -17.46a. The SHBP is not itself an insurance carrier, but rather a program that offers health benefit coverage through contracts negotiated between the SHB Commission and insurance carriers. N.J.S.A. 52:14-17.28. Once a local government employer has elected to participate in the SHBP, it is "a participating employer under the program, subject to and in accordance with the rules and regulations of the [SHB] [C]omission related thereto." N.J.S.A. 52:14-17.37(a).

## B.

## Chapter 78 and Creation of the Plan Design Committee

"In 2011, the Legislature enacted Chapter 78, making numerous significant changes to public employee pension and health care benefits."

Rosenstein v. State, 438 N.J. Super. 491, 494 (App. Div. 2014). See also L. 2011, c. 78, § 45(b) (codified at N.J.S.A. 52:14-17.27). Perhaps the most significant change to the SHBP was Chapter 78's creation of the Plan Design Committee, which the Legislature vested with "the exclusive authority to design state health benefits plans – a power previously possessed by the [SHB Commission]." Ibid.

The Plan Design Committee consists of twelve members: six members appointed by the Governor and six members from various state labor unions.[5] N.J.S.A 52:14-17.27(b). The SHB Commission, meanwhile, consists of five members: "the State Treasurer; the Commissioner of Banking and Insurance; the Chairperson of the Civil Service Commission; a State employees' representative chosen by the Public Employee Committee of the AFL-CIO; and . . . a local employees' representative chosen by the Public Employee Committee of the AFL-CIO." N.J.S.A 52:14-17.27(a). As this court has previously observed:

---

[5] Specifically, the six union members are: "three members . . . appointed by the Public Employee Committee of the AFL-CIO; one member . . . appointed by the head of the union . . . that represents the greatest number of police officers in this State; one member appointed by the head of the union . . . that represents the greatest number of firefighters in this State; and one member . . . appointed by the head of the State Troopers Fraternal Association." N.J.S.A 52:14-17.27(b).

> [O]ne clear legislative intent revealed by [the creation of the Plan Design Committee] . . . was the leveling of the balance of power between labor and the public employer by giving six votes to each side, rather than the three-to-two edge previously possessed by the administration when the [SHB Commission] had the authority to create, modify and terminate components of the state health plan.
>
> [Rosenstein, 438 N.J. Super. at 501 n.4.]

The Plan Design Committee establishes the components of the SHBP's overall plan designs, while the SHB Commission authorizes the plan's contracts with various insurance carriers. See N.J.S.A. 52:14-17.28; see also Beaver v. Magellan Health Servs., Inc., 433 N.J. Super. 430, 433 (App. Div. 2013) ("Although the State contracts with health insurers to administer various benefit plans for program participants, the [SHB Commission] alone has the authority and responsibility to make payments on claims and to limit or exclude benefits.").

Accordingly, the SHBP Act provides:

> The [Plan Design Committee] shall have the responsibility for and authority over the various plans and components of those plans, including for medical benefits, prescription benefits, dental, vision, and any other health care benefits, offered and administered by the program. The [Plan Design Committee] shall have the authority to create, modify, or terminate any plan or component, at its sole discretion. Any reference in law to the [SHB Commission] in the context of the creation,

modification, or termination of a plan or plan component shall be deemed to apply to the [Plan Design Committee].

[N.J.S.A 52:14-17.27(b) (emphasis added).]

See also Rosenstein, 438 N.J. Super. at 500 ("[T]he adoption of Chapter 78 transferred authority over the plan design of the state health benefits program to the newly-created [Plan Design Committee]"); Teamsters Local 97 v. State, 434 N.J. Super. 393, 416 (App. Div. 2014) ("With the enactment of Chapter 78, the Legislature has vested the [Plan] Design Committee with the sole discretion to create, modify, or terminate any plan or component, as well as to set amounts for maximums, co-pays, deductibles, and other participant costs for all plans offered.").

C.

SHBP Contract Procurement and Coverage Terms

N.J.S.A. 52:14-17.29 mandates the types of coverage the SHB Commission must provide for when procuring contracts with insurers, and also contains several subsections discussing the administration of contract coverages. For example, N.J.S.A. 52:14-17.29(A)(1)-(2) details the required coverage for "basic benefits" (e.g., hospital benefits, surgical benefits, inpatient

benefits) and "major medical expense benefits," which provides benefit coverage for "reasonable and necessary eligible medical expenses."

Subsection (D) of this portion of the statute, an administrative provision, provides in pertinent part:

> Benefits under the contract or contracts purchased as authorized by this act may be subject to such limitations, exclusions, or waiting periods as the [SHB Commission] finds to be necessary or desirable to avoid inequity, unnecessary utilization, duplication of services or benefits otherwise available . . . . No benefits shall be provided beyond those stipulated in the contracts held by the [SHB Commission].
>
> [N.J.S.A. 52:14-17.29(D) (emphasis added).]

Subsection (J), the last portion of N.J.S.A. 52:14-17.29, was included in the Chapter 78 amendments enacted in 2011. Subsection (J) instructs:

> [T]he . . . Plan Design Committee shall provide to employees the option to select one of at least three levels of coverage each for family, individual, individual and spouse, and individual and dependent, or equivalent categories, for each plan offered by the program differentiated by out of pocket costs to employees including co-payments and deductibles. Notwithstanding any other provision of law to the contrary, the [Plan Design Committee] shall have the sole discretion to set the amounts for maximums, co-pays, deductibles, and other such participant costs for all plans in the program.
>
> [N.J.S.A. 52:14-17.29(J) (emphasis added).]

A-1228-17T2

See also Teamsters Local 97, 434 N.J. Super. at 417 ("In view of the Legislature's vesting in the [Plan] Design Committee the sole discretion to make changes in the . . . healthcare plans, such changes are no longer effectuated through collective negotiations between the State and its employees.").

D.

Administration of the SHBP

The provision creating the SHB Commission and the Plan Design Committee, N.J.S.A. 52:14-17.27, states in pertinent part: "The [SHB] [C]ommission, in consultation with the [Plan Design Committee], shall establish rules and regulations as may be deemed reasonable and necessary for the administration of [the SHBP Act]."

Pursuant to that delegated authority, the SHB Commission promulgated N.J.A.C. 17:9-1.3, a regulation which governs hearings before the SHB Commission. That regulation provides, in pertinent part, that "any member of the SHBP who disagrees with a decision of the carrier and has exhausted all appeals with the plan . . . may request that the matter be considered by the [SHB] Commission." N.J.A.C. 17:9-1.3(a).

The Division of Pensions and Benefits ("the Division"), in turn, administers the SHBP. N.J.A.C. 17:1-1.1(d). The SHB Commission is one of

A-1228-17T2

thirteen "boards and commissions" that provides "oversight and direction to the [Division's] benefits programs." N.J.A.C. 17:1-1.1(f)(8).

The Attorney General serves as the legal advisor to both the SHB Commission and the Plan Design Committee. N.J.S.A. 52:14-17.27(a).

With this backdrop in mind, we turn to the substance of the appeal.

III.

A.

As a threshold matter, the County argues that the Unions are judicially estopped from contesting the authority of the SHB Commission to issue a ruling on Question 3 because the Unions specifically requested the SHB Commission to issue the declaratory ruling. The Attorney General does not join in this argument.

Although it is understandable from a practical perspective why the County would raise this argument, judicial estoppel is considered "an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" Ali v. Rutgers, 166 N.J. 280, 288 (2000) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)).

The essence of the Unions' argument – that the SHB Commission does not have jurisdiction to issue a declaratory ruling on Question 3 – is essentially an issue of subject matter jurisdiction, a fundamental concern which can be raised at any time. See, e.g., Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div. 2000); see also Murray v. Comcast Corp., 457 N.J. Super. 464, 470 (App. Div. 2019) ("Subject matter jurisdiction cannot be waived by the parties' failure to object, nor conferred upon the court by the parties' agreement"); Lall v. Shivani, 448 N.J. Super. 38, 48 (App. Div. 2016) ("Challenges to subject matter jurisdiction may be raised at any time.").

Consequently, although we are puzzled as to why the Unions presented Question 3 to the SHB Commission in the first place, they are not barred by principles of judicial estoppel from raising on appeal a jurisdictional challenge to the SHB Commission's authority to answer Question 3.

B.

Having dispensed with the estoppel argument, we turn to the crux of this appeal: Whether the SHB Commission properly exercised jurisdiction over the issue raised by Question 3.

The Unions contend that the Plan Design Committee has the sole jurisdiction over this issue, and therefore the declaratory ruling by the SHB

Commission was ultra vires. To support this position, the Unions cite to N.J.S.A. 52:14-17.29(J), which provides: "the [Plan Design Committee] shall have the sole discretion to set the amounts for maximums, co-pays, deductibles, and other such participant costs for all plans in the program." (Emphasis added). Therefore, because Question 3 essentially asks whether plan participants (i.e., union members) can be reimbursed for increased costs, and because the Unions interpret reimbursements and "participant costs" as "one and the same," the Unions maintain that the Plan Design Committee alone has the authority to adjudicate Question 3.

It is undisputed that the Plan Design Committee has the sole authority to design and modify components of statewide health plans. See, e.g., Rosenstein, 438 N.J. Super. at 500; see also N.J.S.A. 52:14-17.27(b). Indeed, the SHB Commission recognized this principle in its declaratory ruling, stating: "The [Plan Design Committee] has the sole authority to modify these plan components and the [SHB] Commission is bound by the plan components created by the [Plan Design Committee]." The Plan Design Committee also has the authority to modify a plan, plan component, or to terminate a plan. It does not, however, have any authority over labor relations.

The Plan Design Committee is not an adjudicatory body. The Unions do not point to any regulatory or statutory authority under which the Plan Design Committee would have the jurisdiction to issue an adjudicatory decision on Question 3. Even if Question 3 were brought before the Plan Design Committee, and it decided that the County could reimburse participants dollar-for-dollar for increased costs, it is unclear how the Committee could enforce that decision. In fact, the Plan Design Committee notably is not mentioned at all in the SHBP regulations.

By contrast, the SHBP regulations vest certain adjudicatory authority to the SHB Commission, albeit mainly for the adjudication of benefits and coverage disputes between participants and insurance carriers. That mechanism enables disputes to be brought before the SHB Commission, which in turn can refer contested factual disputes to the Office of Administrative Law. See, e.g., N.J.A.C. 17:9-1.3(d).[6] In that same vein, the regulations of the Division

---

[6] In issuing the declaratory ruling in the present case, the SHB Commission cited N.J.S.A. 52:14B-8 as its authority to issue such a ruling. That provision generally covering New Jersey administrative agencies states:

> [A]n agency upon the request of any interested person may in its discretion make a declaratory ruling with respect to the applicability to any person, property or state of facts of any statute or rule enforced or administered by that agency. A declaratory ruling shall

A-1228-17T2

recognize the SHB Commission as one of the "boards and commissions" providing oversight and direction to the benefit programs administered by the Division. N.J.A.C. 17:1-1.1(f)(8).

In addition to these regulatory provisions, the terms of the SHBP Act reflect that the SHB Commission has the authority to enforce and administer the bounds of the existing plan. Two statutory provisions are particularly instructive on this point.

The first statutory provision is N.J.S.A. 52:14-17.27, which details the structure and overlap between the SHB Commission and the Plan Design Committee. As we have already noted, N.J.S.A. 52:14-17.27 provides, in pertinent part: "The [SHB] Commission, in consultation with the [Plan Design Committee], <u>shall establish rules and regulations as may be deemed reasonable</u>

<u>bind the agency and all parties</u> to the proceedings on the state of facts alleged. Full opportunity for hearing shall be afforded to the interested parties. Such ruling shall be deemed a final decision or action subject to review in the Appellate Division of the Superior Court. Nothing herein shall affect the right or practice of every agency in its sole discretion to render advisory opinions.

[(Emphasis added).]

and necessary for the administration of [the SHBP Act]." (Emphasis added). This provision shows that the SHB Commission does in fact have the authority – after consulting with the Plan Design Committee – to create rules and regulations that would aid in the administration of the SHBP Act.

Another instructive statutory provision is N.J.S.A. 52:14-17.29(D), which as we have noted, is in the section establishing the SHB Commission's authority to purchase contracts for health coverage, and to make adjustments to avoid inequity. This provision indicates that the SHB Commission has the authority to consider equitable factors in administering the contracts.

The Attorney General asserts that the SHB Commission's declaratory ruling on Question 3 with respect to these specific Essex County unions avoids inequity in administering the statewide program, because "[a]ltering the participants costs[,] alters the entire plan created by the [Plan Design Committee] and the [SHB] Commission and impacts the costs for everyone. Neither the [SHB] Commission nor participating employer[s] [are] authorized to modify the plan."

We agree with that interpretation of the statutory and regulatory scheme. The Unions have not identified any language in the statutes or regulations that

empowers the Plan Design Committee to revise plan components for a county participant in the SHBP on an employer-specific or union-specific basis.

The Attorney General, who, as previously mentioned, serves as the legal advisor to both the SHB Commission and the Plan Design Committee (although not a party to this appeal), asserts the Plan Design Committee can set participant costs, but that body cannot "retroactively change an existing design on an ad hoc basis."  As the Attorney General puts it: "the [Plan Design Committee] designed the plan.  The SHB Commission enforced the bounds of the plan in issuing its ruling."

In a supplemental brief filed at our request following oral argument, the Attorney General amplified this interpretation of the statutory scheme.  As that supplemental brief explains:

> Employees of an employer other than the State are not automatically included in the State Health Benefits Program.  A local employer[7] must elect to participate in the SHBP for its employees to be eligible. N.J.S.A. 52:14-17.37(a).  Once a local employer elects to participate, the plans available to the local employer are the same as those available to the State, because "all provisions of [the SHBP Act] will . . . be construed as to participating employers . . . the same as for the State."  N.J.S.A. 52:14-17.36 (a); see also N.J. Sch.

---

[7]  An employer is defined to include, among other things, "a county" such as Essex County, but does not include individual bargaining units, such as the Unions.  N.J.S.A. 52:17.35(a).

Bds. Ass'n v. State Health Benefits Comm'n, 183 N.J. Super. 215, 220 (App. Div. 1982) ("The legislative intention was to maintain uniformity in benefits afforded state and local employees."). The local employer may then determine which plans to make available to its employees: "the availability of plans within the program may be limited for employees . . . pursuant to a binding collective negotiations agreement." N.J.S.A. 52:14-17.37(b).

In short, when a local employer elects to participate in the SHBP, it elects to participate in the program itself, not any one plan. The [Plan Design Committee] creates plans for the program, which plans become available to all local employers to offer to its employees. <u>If it so chooses, a participating local employer may select a subset of plans, but it must select from the plans available in the program</u>. Thus, the [Plan Design Committee] has no authority to create a plan that applies only to Essex County employees or the individual bargaining units of the Union.

[(Emphasis added)].

Although we are not obliged to adopt the Attorney General's interpretation[8] of the SHBP Act, we accord the Attorney General a degree of deference because the Attorney General is the legal advisor to the Division as a whole and its sub-agencies. <u>See</u> N.J.S.A. 52:17A-4(e); <u>see also</u> <u>Quarto v. Adams</u>, 395 N.J. Super. 502, 513 (App. Div. 2007) (recognizing that the

---

[8]  The County has submitted a supplemental letter joining in the Attorney General's legal position.

Attorney General's interpretation of a statute or law is entitled "to a degree of deference" because of its "special role as the sole legal adviser to most agencies of State Government"); Clark v. Degnan, 163 N.J. Super. 344, 371 (Law Div. 1978) (finding the Attorney General's statutory interpretation, as the legal advisor to most state agencies, is considered "strongly persuasive" but ultimately not binding on courts).

We reject the Unions' contention that the Attorney General, as the legal advisor to both the SHB Commission and the Plan Design Committee, has an untenable conflict of interest in asserting a single legal position on behalf of the State contrary to the wishes of six of the twelve Plan Design Committee members. The "wide scope of function" of the Attorney General justifies the Attorney General in having the discretion to overrule the preferences of client agencies in interpreting the law and litigating cases. See Gormely v. Lan, 88 N.J. 26, 43-44 (1981).

In their own post-argument submission, the Unions assert the Attorney General's interpretation of the statute is too narrow and not reflective of actual practice. The Unions inform us that the Plan Design Committee recently exercised authority in altering plans available to members of a union of State workers. Although we appreciate the Unions calling the development to our

25

attention, it does not analytically refute the soundness of the Attorney General's statutory analysis in this case. In addition, the situation identified by the Unions involved a union of State workers, not local or county employees participating in the SHBP.

In sum, we agree with the Attorney General that the Plan Design Committee has no statutory authority to alter the statewide plan components at the county level, on a county-specific or union-specific basis. Such alterations would affect utilization of health benefits and, in turn, upset the economic balance of the overall statewide plan. The SHB Commission properly exercised jurisdiction over Question 3 and provided a legally sound answer.

C.

Lastly, the Unions argue that the SHB Commission's ruling on Question 3 unfairly deprives them of a possible "make-whole" remedy in the PERC proceedings. The Unions allege the SHB Commission's conclusion that reimbursement funds are impermissible undermines PERC's ability to provide an award of monetary damages. We disagree.

The declaratory ruling addressed this concern by expressly stating that, "[t]he Commission is confident that in cases where violations of the New Jersey Employer-Employee Relation Act are found, the PERC <u>can fashion an</u>

<u>appropriate remedy that does not infringe on the SHBP plan design or offend</u> <u>the public policies underlying the State Health Benefits program</u>."  (Emphasis added).

As the County notes, there has been no harm yet established by the union members whose grievance is pending before PERC.  The County argues the Unions are improperly seeking from this court an advisory opinion on remedial options before PERC.  We agree.

The SHB Commission did not rule that PERC cannot issue an appropriate remedy if an unfair labor practice is found by PERC.  It expressed confidence PERC can fashion a fair remedy that would not infringe on the overall SHBP plan design.

In essence, the Unions are seeking from this court an advisory opinion about whether any fair remedies – other than dollar-for-dollar reimbursements to individual employees – could be issued in the future by PERC in this matter. We respectfully decline to do so.

The questions of remedy must be decided in the first instance by PERC. See <u>De Vesa v. Dorsey</u>, 134 N.J. 420, 428 (1993) (noting that our courts "refrain[] from rendering advisory opinions or exercising [their] jurisdiction in the abstract.").  See also <u>G.H. v. Twp. of Galloway</u>, 199 N.J. 135, 136 (2009)

(instructing that courts should not "answer abstract questions or give advisory opinions."). If any party is aggrieved by PERC's ultimate decision, including as to the terms of any remedy, it may appropriately seek appellate review of that ruling in a separate appeal.

IV.

Affirmed, without prejudice to findings and any appropriate remedies that PERC may choose to issue in the pending unfair labor practice case.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION