NEW JERSEY SCHOOL BOARDS ASSOCIATION, AND THE EWING TOWNSHIP BOARD OF EDUCATION, MERCER COUNTY, APPELLANTS, v. STATE HEALTH BENEFITS COMMISSION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 17, 1982—Decided February 26, 1982.

Before Judges MATTHEWS, PRESSLER and PETRELLA.

*David W. Carroll* argued the cause for appellant New Jersey Schools Boards Association.

*Robert B. Rottkamp,* Jr. argued the cause for Ewing Township Board of Education (*Merlino, Rottkamp & Flacks,* attorneys).

*Robert K. Walsh,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General, attorney; *Andrea Silkowitz,* Deputy Attorney General, of counsel).

*Ruhlman* and *Butrym,* attorneys for Ewing Township Education Association and New Jersey Education Association, submitted a brief as *amicus curiae* (*Richard A. Friedman* and *Cassel R. Ruhlman,* Jr., on the brief).

*Colleen Meyer* submitted a brief on behalf of New Jersey Association of School Administrators, as *amicus curiae.*

The opinion of the court was delivered by

MATTHEWS, P. J. A. D.

This is an appeal from the final decision of the State Health Benefits Commission increasing the health benefits available to participating local government employers under the New Jersey State Health Benefits Program Act. *N.J.S.A.* 52:14–17.25 *et seq.*

The State Health Benefits Commission has been statutorily delegated the function of negotiating and procuring contracts for the provision of health benefits for state and participating local government employees. *N.J.S.A.* 52:14–17.27, 17.28. On October 7, 1981 the Commission was advised by the State Office of Employee Relations that, as a result of a recently negotiated agreement, the State was obligated to provide increased health benefits to its employees. More specifically, the agreement mandated a change in Blue Shield coverage from the 750 plan to the 1420 plan.[1] Consequently, on October 13, 1981 the Secretary of the Commission wrote to the program's health insurance carriers, informing them of the expected benefit level increase for state employees effective January 1, 1982, and also advising them to anticipate a similar increase in benefits for the local government employee group effective May 1, 1982. In explaining the latter increase, the Secretary stated that *"N.J.S.A.* 52:14–17.36 mandates a uniform benefit schedule for local government employees and State employees." He added that "the statute is fairly explicit so that we cannot provide benefits for State employees without providing comparable benefits for local government employees at the earliest possible time."

In response to requests from the Commission, the Attorney General gave two advisory opinions regarding the effectuation of the negotiated agreement and its impact on participating local government groups. The first opinion, dated October 22, 1981, advised the Commission that it had "the authority under the existing scheme to provide for the purchase of the more

---

[1]The 1420 series differs from the 750 series in two respects. The most important difference is that the schedule of payments for specific medical procedures is, across the board, 40% higher than that payable under the 750 series. The second difference is that the employee income levels below which participating physicians may not charge higher fees is higher under the 1420 series than under the 750 series. In terms of costs, the Blue Shield component of the monthly premium for 1982 will increase 37.6% for the most common employee coverages (under 65), and 63.5% where the employee or his/her spouse is over 65.

favorable Blue Shield reimbursement called for in the collective negotiations agreement." In the second opinion, issued November 6, 1981, the Commission was informed that the statute mandated the extension of these increased Blue Shield benefits to all participating groups.

On December 3, 1981 the Commission met and approved the change to the 1420 series of Blue Shield benefits, voting to implement the increase for state employees effective January 1, 1982 and for local government employees effective May 1, 1982. Notification to this effect was sent to all participating local employees on December 10, 1981.

The New Jersey School Boards Association, acting on behalf of 426 boards of education who are participants in the state health benefits program, and Ewing Township Board of Education, one of the 426 participating boards, filed this appeal, challenging the extension of the increased Blue Shield benefits to local groups. We accelerated the hearing date on motion. The New Jersey Association of School Administrators, the Ewing Township Education Association and the New Jersey Education Association were permitted to intervene as *amici curiae.*

Appellants essentially take issue with the Commission's legal conclusion that the State Health Benefits Program Act, *N.J.S.A.* 52:14–17.25 *et seq.*, mandates a uniform benefit schedule for all participating employees, state and local. They assert that the statute requires that the level of benefits provided be "substantially equivalent" to those benefits in effect when the act first became law in 1961. Since the level of benefits provided by both the 750 and 1420 plans exceeds the minimum 1961 level, appellants maintain that the extension of the higher benefits to local groups is discretionary and not mandated. We disagree. Our reading of the explicit language of the statute, and review of the legislative history, and the administrative practice has led us to conclude that the act mandates one level of basic benefits for both state employees and participating local groups.

The law which created the State Health Benefits Commission was originally enacted by the Legislature in 1961. Pursuant to

that act the Commission was created and consisted of the State Treasurer, the Commissioner of Insurance[2] and the President of the Civil Service Commission. The Commission was directed to establish a health benefits program for state employees, *N.J. S.A.* 52:14–17.25, and to negotiate and procure contracts for the provision of such benefits from licensed carriers. It was not to enter into a contract unless the health benefits provided thereunder were equal to or exceeded the minimum standards specified in the act. *N.J.S.A.* 52:14–17.28.

In 1964 the act was amended to permit voluntary participation in the state program by local government units, including counties, municipalities and school districts. *N.J.S.A.* 52:14–17.34. The Commission was instructed to prescribe rules and regulations by which local employers could elect to participate in "the health benefits program provided by that act." *N.J.S.A.* 52:14–17.36. The amendments further provided:

All provisions of that act will, except as expressly stated herein, be construed as to participating employers and to their employees and to dependents of such employees the same as for the State, employees of the State and dependents of such employees. [*N.J.S.A.* 52:14–17.36]

As specified in both the 1961 and 1964 versions of the act, the minimum level of basic benefits which the Commission was mandated to provide included:

(A) The contract or contracts purchased by the commission pursuant to section 4 shall as a minimum provide 2 separate coverages or policies as follows:

(1) Basic benefits which shall include

(a) Hospital benefits, including outpatient,

(b) Surgical benefits,

(c) In-patient medical benefits, and

(d) Obstetrical benefits, in the case of family contracts.

Basic benefits shall be substantially equivalent to those available on a group remittance basis to employees of the State and their dependents under the subscription contracts of the New Jersey "Blue Cross" and "Blue Shield" Plans in effect on the effective date of this act; and

(2) Major medical expense benefits .... [*N.J.S.A.* 52:14–17.29, L. 1961, c. 49]

[2]Then the Commissioner of Banking and Insurance. See *N.J.S.A.* 17:1C–1 *et seq.*

Thus, as originally enacted, the act described the type of bene-
fits, *i.e.*, hospital, surgical, etc., which at a minimum must be
provided. Moreover, the act expressly specified the minimum
level of coverage which was to be at least "substantially equiva-
lent" to the level available to state employees when the act went
into effect in 1961.

Appellants contend that the present mandate of the act is to
require that participating local groups be afforded the minimum
level of benefits which was in effect in 1964 when the act was
amended to permit their participation. They thus argue that if
the minimum level of benefits then required is being provided,
the statutory mandate as to them has been met, and there is no
further requirement that subsequent increases in the benefit
level afforded to state employees be accorded as well to local
participants. We regard this argument as wholly untenable in
view of the clear legislative intention evidenced by the 1964
amendment, particularly in light of the subsequent legislative
history of the act. We are satisfied that the legislative inten-
tion was to maintain uniformity in benefits afforded state and
local employees unless the Legislature itself has otherwise pro-
vided.

As heretofore noted, the 1961 and 1964 versions of *N.J.S.A.*
52:14–17.29 required that the level of benefits be substantially
equivalent to that being provided by the Blue Cross and Blue
Shield Plans then in effect. In 1970, by *L.*1970, *c.*231, that
section was amended to delete the reference to any plan in
effect. We are satisfied that the purpose of that deletion was
not to authorize different benefit levels for state and local
employees in the future; rather, it was to avoid the necessity
for recurring statutory amendments each time a modification in
the existing benefit level was contemplated. The effect and
import, therefore, of the 1970 deletion of the reference to
existing contracts was simply to permit the Commission to
approve and implement such benefit increases as might be
provided, whether by its contract negotiations with the carriers
or by employee-employer collective negotiation. There is noth-

ing to suggest that the Commission was authorized by the 1970 deletion to vary the benefit levels between state and local employees. It is also clear from the record that the Commission itself so interpreted the import of the 1970 amendment of the section and that it thereafter proceeded, without objection from local participants, to implement that understanding of the amendment. We, of course, accord substantial weight to the administrative agency's contemporaneous construction of its statutory mandate. *See, e.g., Infocomp Corp. v. Somerset Trust Co.*, 165 *N.J.Super.* 382, 391 (App.Div.1979); *Medcor, Inc. v. Finley*, 179 *N.J.Super.* 142, 145 (App.Div.1981).

We are satisfied that unless the Legislature has itself otherwise provided, all statutory enhancements of required benefits since 1964 have been expressly intended to apply uniformly to state and local participants. Thus, in 1968 *N.J.S.A.* 52:14–17.29 was amended to include extended basic benefits for both groups, and in 1972 it was amended to include post-hospital services for both groups. See *L*.1968, *c*.135; *L*.1972, *c*.75.

We recognize that, as appellants point out, some distinctions have developed in the respective programs for state and local employees. Appellants point, for example, to the following:

(1) The programs are separately experience rated. This option was authorized by the Legislature (*N.J.S.A.* 52:14–17.39), and the program has been so administered (*N.J.A.C.* 17:9–5.1). Indeed the carriers (Blue Cross-Blue Shield of New Jersey and the Prudential Insurance Company) treat each group as wholly independent of one another. Compare the Blue Cross-Blue Shield Experience Rating and Rate Projections for State Employees (Group # 90000 and 91000) with that for Local Employees (Group # 92000), Prudential also maintains separate experience and rating.

(2) As a consequence the premium rate schedules for the State group and for the local group are also separate and independent.

(3) The statute requires both the State and the local participating employers to pay the employee's share of the premium, while granting to all employees the right to purchase dependents' coverage at *their own expense. N.J.S.A.* 52:14–17. This does not prohibit, however, the State or any local employer from paying for dependents' coverage as an additional benefit over and above the statutory minima. Indeed, the State chose to begin doing so a number of years ago, but local participating employers have never been required to follow suit. The decision as to whether the local employer would pick up the premium for dependents' coverage, has remained a matter for local collective negotiations.

(4) The State and local programs also differ in terms of the breadth of the program vis a vis which employees are covered. Under the State program, a minimum work week of 35 hours is normally required for an employee to enroll, whereas any local employee who works 20 hours per week is covered. Compare *N.J.A.C.* 17:9–4.2(a)(1) with *N.J.A.C.* 17:9–4.5.

(5) Under a 1976 amendment to the statute, the Commission was authorized to enter into contracts for drug prescription and other health care benefits. *N.J.S.A.* 52:14–17.29(F). Since then, the Commission has acted on and approved premium rates for a drug prescription program applicable to State employees only.

(6) A State employee on a leave of absence without pay is entitled to have full coverage continued at State expense for three months, while a local employee's benefits are terminated earlier, unless the employee elects to continue coverage at his/her own expense. See *N.J.S.A.* 52:14–17.32; *New Jersey Public Employee Benefit Manual* (1980) Paragraph 114.2 at 319.

We are, however, satisfied that none of these items of "different treatment," affects the basic benefits required to be substantially equivalent under the statute. Most of them exist because of differing administrative problems confronting the two groups, varying employment practices (*e.g.*, there are few if any part-time state employees in the plan), and actuarial considerations, the latter, of course, dictating the existence of the two groups. The drug prescription program is not mandated by the act under *N.J.S.A.* 52:14–17.29, while surgical benefits covered by the 1420 series are. More significantly, all of the above benefit distinctions are expressly provided for by statute, further demonstrating the lack of power of the commission unilaterally to authorize any benefit variation between the two groups.

The uniformity which necessarily results from our interpretation of the statute is consistent both with the legislative history and with the long-standing administrative practice. Thus in the statement accompanying Senate Bill 46 (1963),[3] which was introduced to provide for the extension of the state program to local government units, the purpose of the proposal was explained as follows:

---

[3]Senate Bill 46 was conditionally vetoed by Governor Hughes for its failure to separate the claims experience for the state and local groups. Senate Bill

This is a permissive bill allowing municipalities, counties and school districts to join the public employees health benefits program which includes coverage for major medical, Blue Cross and Blue Shield insurances. *The benefits are the same as now provided State employees.*

.    .    .    .    .    .    .    .

This bill is the logical way to provide the greatest benefits to public employees in New Jersey at the lowest cost to both employers and employees. [Emphasis supplied]

It has been the practice of the Commission during the past 17 years to extend to local employers the same basic benefits as have been provided to state employees. "A long period of consistent construction by an administrative agency in the field of its expertise is entitled to be given great weight by the courts." *Radiological Society of N. J. v. Sheeran*, 175 *N.J.Super.* 367, 379 (App.Div.1980), certif. den. 87 *N.J.* 311 (1981). Both the legislative history and administrative practice support a reading of the statute which mandates the provision of uniform basic benefits.[4]

The contention of *amicus* New Jersey Association of School Administrators that construing the statute to require uniform benefits "runs in direct contradiction to labor relations statutes, education laws and constitutional mandates" we find to be without merit. Local groups are not forced to participate in the state program. They may voluntarily elect to participate in the

---

314 was introduced as a replacement for Senate Bill 46 and, after providing for separation of claims experience for state and local employers, was enacted substantially as originally proposed in Senate Bill 46.

[4] The Legislature's desire to achieve uniformity of benefits for all public employees is further evidenced by *N.J.S.A.* 40A:10-25, which provides:

It shall be the duty of the executive officer of any employer who enters into a contract pursuant to this subarticle to file a copy thereof with the State Employees Health Benefits Commission. The commission shall prepare and file periodically, and not less than every 2 years, a report to the Governor and the Legislature as to the contracts being entered into by employers and shall make such recommendations concerning the contracts and the coverage thereunder as it deems appropriate to achieve uniformity of coverage and benefits for employees throughout the State.

program and, if the benefits provided thereunder exceed those agreed upon through the negotiating process or provided for in a budget, a local group is free to withdraw from it at any time consistent with its obligations under any existing collective negotiation agreements. *N. J. Policemen's Benev. Ass'n v. N. J. Health Ben. Comm'n,* 153 *N.J.Super.* 152 (App.Div.1977); *Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Ed.,* 79 *N.J.* 574, 580–581 (1979).

Finally, since the Commission was statutorily required to take the action which it did, there is no merit to appellants' assertion that the Commission violated the rule-making requirements of the Administrative Procedure Act, *N.J.S.A.* 52:14B–5. *See Equitable Life Mort. v. N. J. Taxation Div.,* 151 *N.J.Super.* 232 (App.Div.1977), certif. den. 75 *N.J.* 535 (1977), wherein this court explained:

> As a general proposition, it is clear that if the language of a provision of a statute which an agency is empowered to administer and enforce leaves no room for substantial debate over its meaning, an administrative rule reiterating the inevitable statutory consequence would not by definition constitute either a statutory interpretation or a statutory implementation which must be expressed by a rule promulgated pursuant to the Administrative Procedure Act. Hence and tautologically, such a clear statutory provision is enforceable by the agency in accordance with its plain meaning without the necessity imposed by the Administrative Procedure Act for a prior rule promulgation. [at 240]

Affirmed.