**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3937-19

PATERSON POLICE PBA
LOCAL NO. 1, PATERSON
POLICE LOCAL 1, SUPERIOR
OFFICERS ASSOCIATION,
PATERSON FIREFIGHTERS
ASSOCIATION, AND PATERSON
FIRE OFFICERS ASSOCIATION,

     Plaintiffs-Respondents,

v.

CITY OF PATERSON,

     Defendant-Appellant.

_____

Argued February 22, 2021 – Decided April 19, 2021

Before Judges Messano, Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000120-19.

Leonard S. Spinelli argued the cause for appellant (Genova Burns, LLC, attorneys; Angelo J. Genova and Joseph M. Hannon, of counsel and on the brief; Leonard S. Spinelli and Daniel Pierre, on the briefs).

Mark C. Rushfield, argued the cause for respondents Paterson Police PBA Local No. 1, Paterson Police Local 1, and Superior Officers Association (Shaw Perelson May & Lambert, LLP, attorneys; Mark C. Rushfield, of counsel and on the joint brief).

Craig S. Gumpel argued the cause for respondent Paterson Firefighters Association and Paterson Fire Officers Association (Law Offices of Craig S. Gumpel, LLC, attorneys; Craig S. Gumpel, of counsel and on the joint brief).

Amy Chung, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Amy Chung, on the brief).

PER CURIAM

Defendant City of Paterson (the City) appeals from a January 29, 2020 trial court order confirming an arbitration award (the Award) that required the City to reinstate its self-insured health benefits program, "as it existed as of December 31, 2018."[1] Once the City "reestablished" its program, the Award required the City to "transfer all police and fire employees, retirees, and dependents from the [State Health Benefits Plan] (SHBP) back into the self-insured plan." The City also appeals from a June 22, 2020 order, which not only

---

[1] The same order dismissed the City's counterclaim to vacate the award.

denied reconsideration, but also ordered, sua sponte, the City "to move all public employees out of the SHBP [] and into the self-insured plan by the end of June 2020." (emphasis added). For the following reasons, we vacate the trial court's orders to the extent they confirmed and then modified the arbitrators' remedy, and we remand for further proceedings.

I.

The Municipal Revitalization Index (MRI) of the New Jersey Department of Community Affairs (the DCA) characterizes the City as a "distressed" municipality, defined as "a multi-dimensional municipal condition linked to fiscal, economic, housing, and labor market weakness in conjunction with a resident population that is generally impoverished and in need of social assistance."[2] Annual recurring budget deficits provide compelling evidence of the City's distressed financial state. For approximately ten years, the City has needed transitional aid from the DCA to support its operating budgets. While receiving this financial aid, the City has operated under the supervision and control of the DCA through an annual Memorandum of Understanding (MOU)

---

[2]  Office of Policy and Regulatory Affairs, New Jersey Department of Community Affairs, Measuring Distress in New Jersey: The 2017 Municipal Revitalization Index 3. "Historically, the MRI has been used as a factor in distributing certain 'need based' funds." Ibid.

A-3937-19

with the Division of Local Government Services (the DLGS).[3]  The MOU sets forth the conditions and requirements the City must satisfy to receive the transitional aid.  In addition, each MOU has required the City to develop a detailed plan to reduce its reliance on State aid and become self-sufficient.

Prior to January 1, 2019, the City provided its employees medical, prescription, vision and dental health benefits through a self-insured plan administered by Horizon Blue Cross and Blue Shield of New Jersey (the Horizon PPO) and Citizens Rx.  Under the self-insured plan, the City covered 100 percent of its active and retired employees' health care costs, with no stop loss coverage.

The self-insurance plan proved expensive, with steadily increasing costs: approximately $46 million in fiscal year (FY) 2014; $48 million in FY 2015; $49 million in FY 2016; $54 million in FY 2017; and $59 million in FY 2018. In FY 2016, health care costs represented sixteen percent of the City's budget; in 2018, that figure increased to nineteen percent.

---

[3]  The MOU for the 2017 fiscal year recites that the Director of the DLGS "has determined that the [City] is in serious fiscal distress[.]"  On June 23, 2010, DLGS published qualification standards for the "Transitional Aid to Localities," a program intended for "municipalities that have the most severe structural financial problems[,] . . . . despite aggressive cost reductions and service modifications," and need additional assistance "to mitigate significant property tax increases."

The collective negotiations agreement (CNA) for each fire and police union reserved to the City "the right to self-insure or to change insurance companies providing the health benefits agreed to hereunder[,] so long as the health benefits and fee schedules set forth in the [CNA] are substantially equivalent to the existing . . . health benefits."[4] The CNAs specifically provided for the unions' consent to the City changing to the SHBP, so long as

> the following conditions are met:
>
> a. All SHBP benefit plans are made available to [union] members.
>
> b. The City shall select the "10/15" prescription plan.[5]
>
> c. If benefit levels are reduced and/or out-of-pocket costs are increased, by any source, the City shall seek new coverage that is equal to the SHBP coverage that was in place when the City entered the SHBP[.]

---

[4]  Relevant to this case, the City had two CNAs with police unions and four CNAs with fire unions.  Five of the six CNAs ran from August 1, 2010 to July 31, 2019. One CNA with a fire union ran from July 1, 2010 to June 30, 2019.

[5]  According to the unions' insurance expert, the SHBP does not offer "any plan labeled as a 10/15 prescription plan."  When the City switched to the SHBP, it did select the New Jersey Direct 10 plan, which includes a prescription plan.

A-3937-19

In addition to these conditions, the CNAs covering the police unions included one additional condition, that their "insurance expert must conclude that the SHBP is substantially similar to the current level of benefits."[6]

In FY 2017, the City received $25.5 million in transitional aid through an MOU between the City and DLGS (the FY 2017 MOU), which was amended by a FY 2017 MOU Addendum (the FY 2017 Addendum).  In exchange for the $25.5 million in aid, the MOU imposed many conditions upon the City. One such condition required the City "to take all steps necessary to enroll in the [SHBP] should [its] health care costs exceed that of the [SHBP]."  These related conditions in the Addendum provided:

> a. Within sixty days of the execution of the FY 2017 MOU[,] the City shall complete a detailed cost comparison of its FY 2016 cost of medical and prescription claims under the [SHBP].
>
> . . . .
>
> b. The City shall be required to commence the formal process of transferring [its] employees to the [SHBP] within ninety (90) days of receipt of [benefit analyses] concluding that:
>
>> i.  Transfer to the SHBP produces savings determined by the

---

[6] The police union CNAs do not address how the "substantially similar" standard differs from the "substantially equivalent" standard.

A-3937-19

State of New Jersey to warrant said transfer.

  ii.   Levels of service are determined to be substantially similar to the current level of benefits.

If the City failed to comply with these conditions, the City risked losing the greater of the savings projected by the transition to the SHBP or ten percent of its transitional aid.  According to the City, "the loss of any [t]ransitional [a]id could be devastating to the City, its employees and its residents."

On July 1, 2018, a new mayor and administration took office.  At that time, the City faced a projected $10 to $13 million deficit.  To cut costs, the new administration determined the single best way to save money without negatively impacting its citizenry was to transition from its self-insured plan to the SHBP.  In addition, the DCA encouraged the City to enroll its employees in the SHBP by offering financial incentives.  For FY 2019, in addition to receiving $29 million in transitional aid, the City could receive an additional $2 million in aid upon "documentation of successful transfer of the City's existing employee health benefits plan to the [SHBP]."

With the assistance of an insurance consultant, Brown & Brown Metro, the City performed a cost-benefit analysis of transitioning to the SHBP.  The

analysis projected savings to the City of $20 million for FY 2019; $23 million for FY 2020; and $26 million for FY 2021. In addition, the analysis concluded that City employees would benefit from the transition to the SHBP because their Chapter 78[7] premium contribution cost would decrease, due to the SHBP's lower premium cost, thereby increasing the take-home pay of City employees.

Between July and September of 2018, City officials worked on the issues of transitioning to the SHBP. On September 2, 2018, Vaughn McKoy, the City's business administrator, met with fire union representatives to discuss the transition to the SHBP. On September 12, 2018, the City invited the unions to preview the presentation that would be made to City Council on September 25, 2018. On September 18, 2018, City Council held a workshop meeting to discuss the transition to the SHBP; although invited to attend, none of the City's unions attended the workshop meeting.

The City's analysis projected that transition to the SHBP would save the City more than $200 million from FY 2019 through FY 2025. Based on these

---

[7] On June 28, 2011, Chapter 78 went into effect, altering the rate at which public employees must contribute to their health insurance costs. Chapter 78 mandated that employees contribute to their health care and prescription coverage on a percentage-of-premium basis, with the percentage varying depending upon the employee's income and the type of coverage selected. See L. 2011, c. 78, §§ 39 and 41, codified at N.J.S.A. 52:14-17.28(c) and N.J.S.A. 18A:16-17.1.

projections, and after determining that the SHBP was substantially similar to the City's current self-insured plan, the City council adopted a resolution, on September 25, 2018, transitioning all City employees and retirees into the SHBP, effective January 1, 2019. As a result of these actions, the City's self-insured benefits through the Horizon PPO and Citizens Rx would terminate after December 31, 2018, and coverage under the SHBP would commence on January 1, 2019. Of the City's nineteen bargaining units, only the fire and police units opposed the transition.

Not all retirees who had received health benefits through the City's self-insured plan were eligible for employer-paid coverage through the SHBP, but those retirees were still enrolled in the SHBP. The City addressed this issue by hiring Assure Software, a third-party vendor, to set up a health reimbursement account to reimburse the monthly premium charged under the SHBP to those retirees with less than twenty-five years of service. The City notified those retirees of its plan to deduct their insurance premiums from their monthly pension checks and then reimburse them those amounts through an administrative services agreement. This arrangement applied to approximately thirty-nine retirees with less than twenty-five years of service.

On October 1, 2018, McKoy met with fire union representatives for a follow-up discussion on the transition into the SHBP. That same day, the City notified all City employees that the City Council had authorized the transition from the self-insured plan to the SHBP, effective January 1, 2019. Between October 15 and 31, 2018, the City held approximately twenty-five SHBP enrollment meetings for employees and retirees.

Meanwhile, the fire and police unions retained Dominick Fanuele, an insurance expert, to prepare a comparison between the City's self-insured plan and the SHBP. On October 25, 2018, he issued a preliminary report, identifying multiple areas where the SHBP "will fail to . . . provid[e] substantially similar or equivalent benefits to active participants. As far as the retiree group, the SHBP will fail to provide same or better benefits on many levels."

In October 2018, the fire and police unions filed grievances against the City, challenging the City's decision to cease providing medical and prescription benefits to its members through the City's self-insured plan and enroll them in the SHBP. The unions also filed requests with the New Jersey Public Employees Relations Commission (PERC) for submission of a panel of arbitrators.

In response to concerns and objections, on December 5, 2018, counsel for the City sent a letter advising the police and fire unions that active and retired employees would

> stay [in] the current prescription plan; retirees will remain in the [traditional or current] health benefits plan; active employees will move to SHBP medical coverage; the [sixty]-day waiting period under SHBP will apply to new hires; survivor coverage will be maintained as currently implemented by the City; and active employees with twenty years of service to the City but less than twenty-five years of pensionable employment will be entitled to current retirees health coverage if they retire before June 30, 2019.

Regarding the changes outlined in the letter sent to the police and fire unions, McKoy wrote to the New Jersey Division of Pensions and Benefits, on December 12, 2018, requesting "permission for several categories of employees and retirees to be 'carved out' of the City's pending entry into the [SHBP] . . . due to . . . vested benefits language in past and current collective bargaining agreements." Specifically, the City requested these "carve outs":

> 1. All active and retired employees (excluding Police and Fire retirees) will be enrolled for SHBP medical coverage only. Prescription coverage for all active and retired employees should be carved out of the SHBP. Current and past Collective Bargaining Agreements (CBA's) may not allow for this change in prescription plans.

11

2. All Police and Fire retirees presently enrolled in the Traditional, PPO and Aetna Medicare Advantage Plans will need to be carved out of the SHBP due to the interpretation of vested benefits in CBA contracts upon retirement. There are an estimated 667 enrollees in this category.

3. All retirees who do not meet the SHBP eligibility requirements will need to be carved out of the SHBP. There are an estimated 65 retirees in this category.

McKoy explained that "[b]y allowing these exceptions, the parties believe that it's in the best interest of the City, as well as the Police and Fire, to avoid costly and protracted litigation over the interpretation of vested benefits from past and current collective bargaining agreements."

By letter dated December 19, 2018, the acting director of the Division of Pensions and Benefits denied the City's request to "carve out" certain active and retired employees from participation in the SHBP. He explained that "N.J.S.A. 52:14-17.36 requires uniformity between the health benefits offered through the SHBP to the State and local employers. All active employees and retirees must be enrolled in the SHBP at the same time, and offered only the plan options available within the SHBP."

Meanwhile, on December 18, 2018, the fire and police unions filed an unfair practice charge against the City with PERC, together with an application

for interim relief. The charge alleged that the City's September 25, 2018 resolution authorizing the transfer of active and retired employees from the City's self-insured plan to the SHBP constituted a violation of past and present CNAs between the unions and the City. On December 28, 2018, PERC denied the application for interim relief, finding "the charging parties had not shown a 'substantial likelihood of success' on the merits[.]"[8]

### The Arbitration Hearing

On January 16, 2019, the trial court consolidated the grievances of the police and fire unions and assigned an arbitrator, who held a five-day hearing between March 20 and May 31, 2019. During the first two days, the unions presented extensive testimony from their insurance expert, Fanuele, who identified multiple instances of the SHBP providing reduced benefits or imposing higher costs to employees, retirees, and their dependents.

After the unions rested, the City presented the testimony of McKoy, its business administrator, and the four other witnesses. The City's principal

---

[8] The unions did not file an emergent appeal with this court to challenge PERC's denial of interim relief. We note that "[c]ontractual matters in which the State and its public entities engage must proceed with alacrity." Barrick v. State, Dep't of Treasury, 218 N.J. 247, 264 (2014). To that end, "Rule 2:9-8 provides an avenue to accommodate the interests of all parties in a swift and fair review" of cases, like the matter under review, where the law or "the equities will limit the provision of relief on the merits." Id. at 263-64.

witness was Julianne Kunstle, a licensed health insurance producer and an account vice president with Brown & Brown Metro. She testified that, in comparing the self-insured plan and the SHBP plan, the two plans "are substantially similar." She explained:

> [W]hen you go line by line, benefit by benefit there [aren't] very many discrepancies and in a lot of cases, which we'll go through . . . either [they are] the same or very, very similar or, like I said, in some cases even better moving forward.
>
> . . . .
>
> My overall opinion is when they're not 100 percent identical, they're substantially the same. There will be little benefit differences throughout comparing of both plans, but I think overall both plans are comprehensive and at the end of the day they will provide the same level of coverage to employees. . . . [a]nd retirees.

Kunstle explained that the Horizon PPO under the City's self-insured plan and the Horizon Direct 10 plan the City selected under the SHBP included 98.3 percent of the same primary care physicians and 99 percent of the same specialists. In addition, both plans included the same participating hospitals.

Kunstle identified many other areas where the two plans were equal or the SHBP was better for active employees, including hospital facility coinsurance, lifetime maximum out-of-pocket limits, primary care physician designation, primary care office visits, ambulance services, maternity visits, infertility

14

treatment, laboratory and diagnostic procedures, radiology services, preadmission testing, hospital outpatient surgery, substance abuse services, mental health services, durable medical equipment, and orthotics and prosthetics.

She further testified the two plans were equal or the SHBP was better for retired employees in many areas, including lifetime maximum out-of-pocket limits, primary care physician designation, primary care office visits, maternity visits, preventative care, radiology services, outpatient mental health services, alcohol abuse services, durable medical equipment, and orthotics and prosthetics.

On cross-examination, Kunstle acknowledged the self-insured plan provided a higher level of benefits in these areas: waiting period for coverage for new hires, non-line of duty death survivor benefits, emergency room care, dependents of retirees are not required to apply for Medicare Parts "A" and "B" and pay for Part "B" as a condition for health benefits coverage, monies paid for out-of-network services do not count toward maximum out-of-pocket payments under the SHBP, prescription copayments reimbursed eighty percent under the medical coverage under self-insured plan, generic copayments increased under the SHBP, annual adult wellness, adult immunization, prostrate screenings,

15

well-child exams, hospice care physical therapy, skilled nursing facility/extended care facility, and vision hardware.[9]

The City also presented testimony from its insurance manager, Dena Cortese, who disputed some of the anecdotal claims made by the unions of their members experiencing problems with the SHBP. The unions then recalled Cortese to testify as a rebuttal witness, questioning her extensively about an executive summary she prepared two years earlier, in May 2017. After analyzing various aspects of possible cost savings and potential increase costs that would result from a switch to the SHBP, she concluded "the cost savings presented here is not a compelling savings to make a switch . . . at this time."

At the conclusion of the hearing, the arbitrator framed the issue in the case as follows: "Did the City violate the [CNAs] with the Police and Fire Unions when it moved all active and retired employees (and their eligible dependents) from its self-insured medical and prescription plans to the [SHBP] on January 1, 2019? If so, what shall be the remedy?" At that point, the parties waived closing arguments, instead electing to file written, post-hearing briefs.

---

[9] Using vision hardware (glasses and contact lenses) as an example, a City employee could receive $50 every two years under the City's self-insured plan while the SHBP contained no vision hardware benefit.

On November 18, 2019, the arbitrator issued his Opinion and Award, concluding that the City "violated several contract provisions" contained in the parties' CNAs. While the arbitrator acknowledged that "the City presented evidence illustrating the many areas in which the SHBP provides equivalent benefits, and in some ways better benefits," he ultimately concluded "the reduction in benefits, where they occur, are too significant to support a finding that the SHBP is substantially equivalent to the City self-insured plan." The arbitrator stated that he "considered the City's financial situation," but concluded that it did not give the City "the right to abrogate the contractual obligations it ha[d] agreed to under [the CNAs]." The arbitrator did not otherwise discuss or analyze the City's financial condition.

As noted, the arbitrator's remedy required the City to "[r]einstate the self-insured insurance program which existed as of December 31, 2018," and once reestablished, to "transfer all fire and police employees, eligible retirees and their eligible dependents from the SHBP back into the self-insured plan[.]" The Award also required the City to "[r]eimburse all fire and police employees, eligible retirees and their eligible dependents for any increased costs incurred as a result of being transferred into the SHBP[.]"

The arbitrator rejected the City's contention that the proper remedy was to direct it to set up a reimbursement fund to pay active employees, retirees and their dependents for any increased out-of-pocket costs, finding such reimbursement "impermissible under the SHBP." Regardless, he determined that "[e]ven assuming that reimbursement was permitted by the State, it would be an inadequate remedy." He found that requiring employees or retirees to advance money for uncovered medical services, prescription drugs, and insurance premiums, and then wait for reimbursement from the City, constituted "an unnecessary hardship."

The arbitrator further ordered the City to reimburse all fire and police employees, retirees and their dependents for any economic loss incurred as a result of the transition to the SHBP, and to reimburse the unions for their shares of the arbitration fees and expenses.

### Trial Court Proceedings

On November 22, 2019, the police and fire unions filed a verified complaint and order to show cause to confirm the arbitrator's award. On January 10, 2020, the City filed its responsive pleading, including a counterclaim to vacate the arbitration award.

18

On January 8, 2020, before the trial court issued its decision, the State Health Benefits Commission (the SHB Commission) passed Resolution 2020-1, allowing local public employers participating in the SHBP to opt out of the SHBP prescription drug plan for retired employees and to offer their own private plans.[10]

On January 29, 2020, the trial court confirmed the arbitration award. On February 3, 2020, the court issued a written statement of reasons supplementing its January 29, 2020 finding that the record supported the arbitrator's conclusions, including that: the transition to the SHBP substantially reduced the benefits guaranteed under the CNAs; the City knew it would violate the CNAs by transitioning to the SHBP; and "reimbursement to employees, retirees and their dependents[] for increased medical and prescription out-of-pocket costs is impermissible under the SHBP."

Citing Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 433 (1996), the trial court held the arbitration award was "reasonably debatable" and also found that the arbitrator had discretion and flexibility in formulating a remedy for the City's breach of the CNAs. The court explained, "The [a]rbitrator

---

[10] On January 30, 2020, the SHB Commission informed public employers of this change in the form of a memorandum with the subject heading: "Local Government Retiree Prescription Drug Plan Carve Out."

supported his position by referring to the specific language in the [CNAs]. Even if the [a]rbitrator's decision was not the preferrable one, it is a reasonably debatable outcome. Under those circumstances[,] a reversal would be contrary to the deferential standard for reviewing arbitral decisions."

On February 14, 2020, the City's legal counsel wrote to the SHB Commission, requesting "clarification as to whether the Commission will permit the City to remove the fire and police members from the SHBP while allowing civilian employees to remain in the plan as the [court's] January 29, 2020 order only applies to the fire and police units in the City."

On February 17, 2020, the assistant director of Health Benefits Operations of the Division of Pensions and Benefits responded, stating that "the relevant SHBP statutes governing local employer participation in the SHBP would not permit the Division to comply with the Order." He explained:

> The relevant statutory provision[s] governing local participation in the SHBP speak to "employer" participation and preclude the Division from allowing discrete subsets of employee groups (collectively bargained or otherwise) from being carved in or out for purposes of SHBP participation. As a local employer that has adopted a resolution and elected to participate in the SHBP, the City . . . is required to enroll all employees and retirees who meet the eligibility requirements.

On February 18, 2020, the City filed a motion for reconsideration, submitting to the trial court the recent pronouncement of the SHB Commission allowing local public employers participating in the SHBP to opt out of the SHBP prescription drug plan. The City also submitted the February 17, 2020 letter advising that the SHB Commission would not permit the "carve out" of the fire and police union members.

On March 13, 2020, the State of New Jersey[11] filed an amicus brief in support of the City's motion. The State confirmed the accuracy of the positions the City argued at arbitration and before the trial court – that a reimbursement plan sponsored by the City to supplement any changes in the level of benefits was a permissible alternative to withdrawal and the City could opt out of the

---

[11] In its amicus brief before us, the State set forth the following explanation for providing input in this case:

> The State is uniquely situated to address these issues. First, the State is the largest public employer in New Jersey and is a party to a number of CNAs. Second, the State administers the SHBP, through which the State provides health benefits to its employees and retirees, as well as the employees and retirees of participating local public employers. Finally, the State provides transitional aid to qualifying localities experiencing budget deficits, including appellant City of Paterson.

SHBP prescription plan for its active employees and retirees, selecting an alternative plan.

Notwithstanding the State confirming the accuracy of the positions advanced by the City, the trial court denied the City's reconsideration motion on June 22, 2020. In addition, the court ordered, sua sponte, the City "to move all public employees out of the SHBP [] and into the self-insured plan by the end of June 2020." (emphasis added).

In a written statement of reasons, the court explained that the City failed to present any basis for concluding that the January 29, 2020 order was based on a "palpably incorrect or irrational basis." The court did not provide any reasons for rejecting the arguments advanced by the State nor did it provide any reasons for modifying the arbitrator's remedy to require the City to "move all public employees out the SHBP . . . and into the self-insured plan by the end of June 2020." (emphasis added). The court then granted the City a thirty-day extension to comply, thereby affording the City an opportunity to request a stay from this court.

On June 25, 2020, the City filed its notice of appeal. On July 31, 2020, we granted the City's request for a stay of the trial court's orders of January 29, and June 22, 2020, pending a decision on this appeal.

II.

Arbitration is "a favored means of dispute resolution." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006); see also Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007) ("Arbitration of labor-management disputes is favored in New Jersey."). Arbitration awards are presumed valid. Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 510 (App. Div. 2004). "Consistent with the salutary purposes that arbitration as a dispute-resolution mechanism promotes, courts grant arbitration awards considerable deference." Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013). To ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards. N.J. Tpk. Auth. v. Loc. 196, I.F.P.T.E., 190 N.J. 283, 292 (2007).

Our Supreme Court has advised that, "in a public-sector arbitration setting, a court can properly vacate an award because of a mistake of law." Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 364 (1994). The Court explained that this "exception is necessary because public policy demands that a public-sector arbitrator, who must consider the effect of a decision on the

public interest and welfare, issue a decision in accordance with the law." Id. at 364-65.

"Generally, when a court reviews an arbitration award, it does so mindful of the fact that the arbitrator's interpretation of the contract controls." Ibid. In public sector arbitration, "a court will confirm an arbitrator's award so long as the award is 'reasonably debatable.'" Middletown Twp. PBA Loc. 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth., 190 N.J. at 292).

Under the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, a reviewing court may vacate an arbitration award in the following instances:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and

definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8(a) to (d).]

However, a reviewing court may not modify an award where it affects "the merits of the controversy." N.J.S.A. 2A:24-9; see also Tretina Printing, 135 N.J. at 355.

In addition, "a court 'may vacate an award if it is contrary to existing law or public policy.'" Middletown Twp. PBA Loc. 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth., 190 N.J. at 294). "[F]or purposes of judicial review of labor arbitration awards, public policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents, rather than based on amorphous considerations of the commonweal." N.J. Tpk. Auth., 190 N.J. at 295.

"The public policy exception is triggered when 'a labor arbitration award – not the grievant's conduct – violates a clear mandate of public policy[.]'" Middletown Twp. PBA Loc. 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth., 190 N.J. at 300). "Public policy is ascertained by 'reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Borough of E. Rutherford, 213 N.J. at 202 (quoting Weiss, 143 N.J. at 434-35). "And, even when the award implicates a clear mandate of public policy, the

deferential 'reasonably debatable' standard still governs." Ibid. (quoting Weiss, 143 N.J. at 443).

The standard of review for granting a motion for reconsideration, pursuant to Rule 4:49-2, is abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established polices, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

With these review standards in mind, we proceed to the substance of this appeal. We begin with an overview of the pertinent statutory and regulatory scheme.

<u>The State Health Benefits Program Act</u>

Through the authority granted by the State Health Benefits Program Act (the Act), the SHBP offers medical, prescription drug, and dental coverage to qualified State and local employees, retirees, and eligible dependents. N.J.S.A. 52:14-17.25 to -17.46a. The SHBP is not itself an insurance carrier, but rather a program that offers health benefit coverage through contracts negotiated between the SHB Commission and insurance carriers. N.J.S.A. 52:14-17.28.

Once a local government employer has elected to participate in the SHBP, it is "a participating employer under the program, subject to and in accordance with the rules and regulations of the [SHB] [C]omission related thereto."  N.J.S.A. 52:14-17.37(a).

"In 2011, the Legislature enacted Chapter 78, making numerous significant changes to public employee pension and health care benefits." Rosenstein v. State, 438 N.J. Super. 491, 494 (App. Div. 2014); see also L. 2011, c. 78, § 45(b) (codified at N.J.S.A. 52:14-17.27).  One of the most significant changes to the SHBP was Chapter 78's creation of the Plan Design Committee, which the Legislature vested with "the exclusive authority to design state health benefits plans – a power previously possessed by the SHB Commission."  Ibid.

The Plan Design Committee establishes the components of the SHBP's overall plan designs, while the SHB Commission authorizes the plan's contracts with various insurance carriers.  See N.J.S.A. 52:14-17.28; see also Beaver v. Magellan Health Servs., Inc., 433 N.J. Super. 430, 433 (App. Div. 2013) ("Although the State contracts with health insurers to administer various benefit plans for program participants, the [SHB Commission] alone has the authority and responsibility to make payments on claims and limit or exclude benefits.").

Accordingly, the SHBP Act provides:

> The [Plan Design Committee] shall have the responsibility for and authority over the various plans and components of those plans, including for medical benefits, prescription benefits, dental, vision, and any other health care benefits, offered and administered by the program. The [Plan Design Committee] shall have the authority to create, modify, or terminate any plan or component, at its sole discretion. Any reference in law to the [SHB Commission] in the context of the creation, modification, or termination of a plan or plan component shall be deemed to apply to the [Plan Design Committee].
>
> [N.J.S.A 52:14-17.27(b).]

See also Rosenstein, 438 N.J. Super. at 500 ("[T]he adoption of Chapter 78 transferred authority over the plan design of the state health benefits program to the newly-created [Plan Design Committee]").

"With the enactment of Chapter 78, the Legislature has vested the [Plan] Design Committee with the sole discretion to create, modify, or terminate any plan or component, as well as to set amounts for maximums, co-pays, deductibles, and other participant costs for all plans offered." Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 416 (App. Div. 2014). "In view of the Legislature's vesting in the [Plan] Design Committee the sole discretion to make changes in the . . . healthcare plans, such changes are no longer effectuated through collective negotiations between the State and its employees." Id. at 417.

The SHBP benefits and requirements are intended to be applied uniformly to all state and local employees. See N.J. Sch. Bds. Ass'n v. State Health Benefits Comm., 183 N.J. Super. 215, 220 n.4 (App. Div. 1982) (holding the Act is designed "to achieve uniformity of coverage and benefits for employees throughout the State.") (quoting N.J.S.A. 40A:10-25); see also CWA v. State, 421 N.J. Super. 75, 100 (Law Div. 2011) (holding N.J.S.A. 52:14-17.36(b) is intended "to increase uniformity in health benefits and employees' contributions thereto."). N.J.S.A. 40A:10-23 provides that if an employer assumes the cost of health insurance coverage for retired employees, it must provide the coverage "under uniform conditions."

The SHB Commission has the exclusive statutory authority to authorize exceptions to the Act's uniformity requirement. It may do so only where the deviation will "avoid inequity, unnecessary utilization, duplication of services or benefits . . . or for other reasons" that the SHB Commission deems necessary. N.J.S.A. 52:14-17.29(D). "No benefits shall be provided beyond those stipulated in the contracts held by the [SHB] Commission. Ibid.

### The City's Appeal

On appeal, the City does not challenge the determination of the arbitrator that the City "violated several contract provisions" contained in the of the

A-3937-19

parties' CNAs. Rather, the City challenges the trial court's confirmation of the arbitrator's remedy, arguing it violated applicable law and public policy. The City contends the arbitration award and its confirmation were premised on two mistaken conclusions of law: "First, the [a]rbitrator concluded that his Award would be enforceable as envisioned, as a 'carve out' of the grieving [u]nions," and second, he "incorrectly concluded that a reimbursement fund was an impermissible or insufficient remedy." In addition, the City asserts "the [a]rbitrator failed to give due consideration to the public welfare, failed to appreciate the impact that the Award would have on the City's unrepresented employees, and failed to give adequate regard to alternative, less disruptive remedies available under the circumstance."

The City further urges us to reverse because the relief granted by the trial court on reconsideration – reinstatement of the City's self-insurance program and return of all City employees and retirees to the program – affects the rights of 1,300 City employees and 900 retirees, who were not joined as parties, contrary to the mandatory joinder rule, Rule 4:28-1(a)(1).

### III.

The Act clearly mandates that to participate in the SHBP, an employer is required to enroll all eligible employees into the SHBP, without exception. The

Act provides that the SHB Commission shall "not enter into a contract under the State Health Benefits Law . . . unless coverage is available to all eligible employees and their dependents[.]" N.J.S.A. 52:14-17.28(c). A participating employer must therefore enroll all of its employees in the SHBP at the same time and offer only the plan options available to the other participating state and local government employees.

We agree with the City that the Award and its confirmation in this case were premised on two mistaken conclusions of law. First, the arbitrator incorrectly concluded his Award would be enforceable as a "carve out" of the grieving unions. Second, he incorrectly concluded that a reimbursement fund constituted an impermissible and otherwise insufficient remedy. In doing so, the arbitrator disregarded clear provisions of the Act that precluded a carve out remedy; in addition, he failed to give due consideration to the public welfare, failed to appreciate the impact that the Award would have on the City's unrepresented employees, and failed to recognize the viability of alternative, less disruptive remedies. Given these errors, the Award in this case was not reasonably debatable.

The arbitrator's opinion clearly reflects his mistaken assumption that the Plan Design Committee would grant the exemptions necessary for the City to

31

comply with the Award, without disrupting the enrollment of the remaining 1,300 employees and 900 retirees:

> My Opinion and Award is limited to police and fire employees, retirees and dependents, resolving the controversy properly put before me under the parties' Agreements. The State (perhaps the Plan Design Committee) has the power and authority to grant exemptions to its rules and regulations. It is free to take whatever action it deems appropriate in light of this Opinion and Award.

Rather than award the unions reimbursement of the monetary differences between the City's self-insured plan and the SHBP, the arbitrator awarded the wholesale withdrawal of the police and fire unions from the SHBP. In doing so, the arbitrator concluded that 1) a reimbursement plan was impermissible under the SHBP, and 2) that a reimbursement plan was, by its definition, an inadequate remedy. Each of these conclusions was mistaken or unsupported by the record and, therefore, presented undue means that further warrant vacating the Award.

"Undue means ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." Borough of E. Rutherford, 213 N.J. at 203. Under this theory, "an arbitration award may be vacated if it is shown not to be supported by any evidence in the record." McHugh Inc. v. Soldo Const. Co., Inc., 238 N.J. Super. 141, 145 (App. Div. 1990).

32

Without any support in the record on the practicalities of a reimbursement fund, the arbitrator concluded that a reimbursement plan was an inadequate remedy. The arbitrator's concern that City employees and retirees would face an "undue burden," if required to pay certain costs or expenses upfront and then receive reimbursement from the City, reflects an assumption that finds little support in the record.

Contrary to Borough of E. Rutherford, in which our Supreme Court specifically affirmed a reimbursement plan as a lawful remedy for increased out-of-pocket expenses, 213 N.J. at 206-07, the arbitrator here incorrectly believed he had no flexibility to allow for some type of reimbursement fund, which resulted in an unlawful, extreme remedy that impacts all City's employees to resolve some employees' grievances. The Court in Borough of E. Rutherford further recognized the need for flexibility in crafting an arbitration award in order to reach a fair solution to complex problems in a wide variety of situations. Id. at 205.

We acknowledge that a dollar-for-dollar reimbursement at the time of service is not an acceptable method because such a structure would fundamentally alter the plan design and thus could seriously affect utilization of services, which in turn can increase the costs of the SHBP to the State and local

government employers; however, as persuasively argued by the State, employer-provided Health Reimbursement Accounts, Flexible Spending Accounts, and funded debit-type cards constitute a viable remedy to compensate members for their increased out-of-pocket costs without affecting member utilization.

On confirmation, the trial court committed essentially the same error, mistakenly assuming, without basis, the SHB Commission would comply with whatever order the court entered, and that the exclusion of the fire and police unions from the SHBP would occur. On reconsideration, the trial court committed further error by requiring the City to "to move all public employees out of the SHBP . . . and into the self-insured plan by the end of June 2020." (emphasis added). At that point, it appears the trial court appreciated the merit of the arguments advanced by the City and the State, that the SHB Commission would not permit the removal of the fire and police union employees from the SHBP without the removal of all 1,300 City employees and 900 retirees.

Awarding the carve out remedy – in the face of the SHB Commission's expressed denial – was both improper and unlawful because it usurped the statutory authority of the SHB Commission. After the arbitrator ordered an ultra vires carve-out remedy, the State of New Jersey appeared as amicus to clarify

for the court the unlawful nature of that remedy and the arbitrator's mistaken rejection of the City's proposed reimbursement remedy as impermissible.

We further note that while the arbitrator and the trial court said they considered the public welfare concerns underlying the City's dire financial distress, their opinions lack any discussion or analysis of this critical issue. In September 2019, the City's long-term financial problems presented a compelling reason for the City to transition to the SHBP by January 1, 2020. The transition was necessary for the City to receive much needed transitional aid. The judge's errant order on reconsideration reflects he fully understood the uniformity requirement, which is why he expanded the order (albeit quite mistakenly). Clearly, the arbitrator did not appreciate the ramification of his decision and disregarded the uniformity requirement, and that the SHB Commission would not approve the consequences of his remedy, i.e., the carve out. The arbitrator and trial court entered their rulings even though the City twice obtained written confirmation that the SHB Commission would not permit the removal of the fire and police union employees from the SHBP without the removal of all 1,300 City employees and 900 retirees. Instead, the SHB Commission flatly rejected the arbitrator's remedy as violating the uniformity requirement and refused to grant an exemption. Awarding the carve out remedy – in the face of the SHB

A-3937-19

Commission's expressed denial – was both improper and contrary to the uniformity provision of the Act as construed by the SHB Commission.

After the trial court confirmed the Award, the City sought reconsideration on several grounds. The original order confirming the Award mandated that the City reinstate the self-insured program for its active and retired police and firefighter employees and eligible dependents and transfer those members to the self-insured plan by a date certain, consistent with the Award. On reconsideration, however, the court modified the Order and Award, directing the City "to move all public employees out of the [SHBP] and into the self-insured plan by the end of June 2020." (emphasis added). The trial court's decision on reconsideration cannot stand for two reasons. First, the court exceeded its authority by modifying the arbitration award without statutory authority. Second, the court's decision impacted the rights of indispensable parties who were not before the court.

The New Jersey Arbitration Act provides for the modification or correction of an arbitration award in only limited circumstances:

> The court shall modify or correct the award in any of the following cases:
>
> a. Where there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to therein;

36

    b. Where the arbitrators awarded upon a matter not submitted to them unless it affects the merits of the decision upon the matter submitted; and

    c. Where the award is imperfect in a matter of form not affecting the merits of the controversy.

The court shall modify and correct the award, to effect the intent thereof and promote justice between the parties.

[N.J.S.A. 2A:24-9.]

The arbitrator expressly stated that his "Award is limited to police and fire employees, retirees and dependents." The remaining 1,300 employees and 900 retirees of the City were not parties to the arbitration nor did they file any action to block the switch to the SHBP. On reconsideration, the trial court improperly modified the Award without any statutory basis, clearly affecting the merits of the controversy and impacting the rights of 1,300 employees and 900 retirees, who were not parties to the arbitration proceeding. The court's reconsideration order "affect[ed] the merits of the controversy," contrary to N.J.S.A. 2A:24-9(c).

The court's reconsideration order directed the City to transition all of its employees to the City's self-insured plan, even those who are non-union or represented by the City's other bargaining units. As a result, those employees

37

would lose their SHBP benefits.[12] The City argues that the trial court failed to appreciate that "[its] non-party employees were indispensable parties," and that "in order to affect the rights of these hundreds of employees, joinder was compulsory," pursuant to Rule 4:28-1(a). Because we conclude the trial judge erred by modifying the arbitration award without proper statutory authority, N.J.S.A. 2A:24-9, we need not address this argument.

The trial court otherwise mistakenly exercised its discretion in denying reconsideration when it refused to consider the February 17, 2020 letter advising that the SHB Commission would not permit the "carve out" of the fire and police union members. The court also refused to give proper consideration to the State's amicus brief and to the recent pronouncement of the SHB Commission allowing local public employers participating in the SHBP to opt out of the SHBP prescription drug plan. Reconsideration was required because the court "failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ., 349 N.J. Super. 455, 462 (App. Div. 2002). Rather than deny

---

[12] As previously noted, upon transfer to the SHBP, City employees would have received increased take-home pay since their Chapter 78 premium contribution cost would have decreased because of SHBP's less expensive premium costs. In addition, many employees may prefer the SHBP since the arbitrator found "many areas in which the SHBP provides equivalent benefits, and in some ways better benefits[.]"

reconsideration, the court should have vacated the remedy ordered by the arbitrator and remanded the matter to him to formulate a remedy that did not include the unlawful carve out, but could include a reimbursement plan as a lawful remedy to compensate for increased out-of-pocket expenses.

Based upon the statutory authority of the Act, the public policy behind the uniformity requirement, and the public welfare implications of enforcing the remedy, both as originally awarded and as modified by the trial court, we are constrained to vacate the trial court's orders to the extent they confirmed the arbitrator's remedy and then modified that remedy on reconsideration. We remand this matter for the trial court to enter an order remanding this matter to the arbitrator to render an appropriate remedy, which may include a reimbursement fund or mechanism to reasonably compensate employees and retirees of the police and fire unions for the increased out-of-pocket costs they experienced as the result of the challenged action. In crafting an appropriate remedy, the arbitrator shall consider the City's serious fiscal distress.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

39 A-3937-19